UNITED STATES of America

v.

Melvin **BAILEY**, also known as "Lefty" et al.

No. 71 CR 368.

United States District Court, N. D. Illinois, E. D.

June 15, 1971.

William J. Bauer, U. S. Atty., Samuel J. Skinner, Asst. U. S. Atty., Chicago, Ill., for United States.

James D. Montgomery, Chicago, Ill., for defendants.

## OPINION

WILL, District Judge.

The United States has petitioned for an order directing certain defendants in this criminal action to furnish examplars of their handwriting to agents of the Federal Bureau of Investigation. The issue presented by this motion is whether the order would, if granted, violate those defendants' Fourth Amendment rights to be free from unreasonable searches and seizures.

The indictment involved in this action contains 132 counts against a total of 23 defendants. Summarized, the indictment charges that all 23 defendants conspired to and that certain of them in fact did defraud the United States of America through their involvement in a program funded by the Office of Economic Opportunity to provide basic education and employment opportunities for approximately 800 members of two Chicago street gangs. The indictment's first count is a conspiracy count charging all 23 with a violation of 18 U.S.C. § 371. The remaining 131 counts charge individual defendants with violations of 18 U.S.C. § 1001 and 42 U.S.C. § 2703. These counts primarily concern the alleged making of fraudulent written statements and the forging of signatures. The defendants involved in this petition, Herman Holmes, Lee Jackson and Andrew McChristian, are not charged in any of counts 2 through 132 but are named as defendants solely in the conspiracy count. According to the Government's petition, the sought examplars are essential and necessary to its case and will be used as a standard of comparison in order to determine whether or not each of the defendants is the author of certain writings.

As a point of departure, we note that the Fourth Amendment, by its terms and by consistent judicial interpretation, does not prohibit all searches and seizures but only those which are unreasonable. Boyd v. United States,

116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). A determination of whether a search or seizure is unreasonable depends upon the particular facts and circumstances of each case, with an exact formula to determine reasonableness being impossible to formulate. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Smith v. United States, 103 U.S.App.D.C. 48, 254 F.2d 751 (1958), cert. denied, 357 U.S. 937, 78 S.Ct. 1388, 2 L.Ed.2d 1552 (1958). The narrow issues presented for determination by the Government's petition are (1) whether a compelled handwriting examplar comes within the search and seizure provisions of the Fourth Amendment and, if the answer to this question is in the affirmative, (2) whether the ordering of the exemplars would be an unreasonable search and seizure.

I

■ The issue of whether the Constitution prohibits the Government from compelling an individual to produce handwriting exemplars or from using such forced exemplars in a criminal trial has come to the fore in recent years. Decisions of the United States Supreme Court clearly indicate that the Fifth Amendment does not prohibit the compelling or using of such exemplars and that handwriting is not a personal communication of a defendant but rather "an identifying physical characteristic." United States v. Wade, 388 U.S. 218, 222–223, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); cf., Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

■ As to the relationship of compelled handwriting exemplars to the Fourth Amendment, all doubts as to the application of this Amendment to physical evidence seized from an individual which is merely an element of his physical characteristics were resolved by the Supreme Court in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). In that case, the Supreme Court established that law enforcement officials may not compel the production of physical evidence, absent a showing of the reasonableness of the seizure, even if that physical evidence is an element of an individual's physical characteristics such as fingerprint evidence. The Court stated:

"* * * (W)e find no merit in the suggestion * * * that fingerprint evidence, because of its trustworthiness, is not subject to the proscriptions of the Fourth and Fourteenth Amendments.[2] Our decisions recognize no exception to the rule that illegally seized evidence is inadmissible at trial, however relevant and trustworthy the seized evidence may be as an item of proof. The exclusionary rule was fashioned as a sanction to redress and deter overreaching governmental conduct prohibited by the Fourth Amendment. To make an exception for illegally seized evidence which is trustworthy would fatally undermine these purposes.

2. Fingerprint evidence would seem no more 'trustworthy' than other types of evidence—such as guns, narcotics, gambling equipment—which are routinely excluded if illegally obtained." 394 U.S. at 723–724, 89 S.Ct. at 1396.

■ In a similar vein, the Court of Appeals for the Seventh Circuit, in ruling upon the reasonableness of a grand jury subpoena requiring certain individuals to provide voice exemplars, concluded that "(c)ompelling a person to furnish an exemplar of his voice is as much within the scope of the fourth amendment as is compelling him to produce his books and papers." Dionisio v. United States, 442 F.2d 276, 279 (7th Cir. 1971). As we can see no distinction between fingerprints, voice exemplars, and handwriting exemplars, and because the Government does not contend to the con-

trary, we conclude that the ordering of handwriting exemplars is subject to the Fourth Amendment's prohibition against unreasonable searches and seizures.

## II

Our focus of inquiry then narrows to the issue of whether the proposed seizure of the handwriting exemplars is a reasonable seizure. If the conclusion is reached that such compelling of exemplars would be an unreasonable seizure, this Court may not compel their production because it is clear that the Fourth Amendment's protection against unreasonable search and seizure may be violated by a court order to produce evidence as well as by the more typical search conducted by police officials. Hill v. Philpott, 445 F.2d 144 (7th Cir. 1971). In any event, this Court would not compel production of exemplars knowing that such production would violate the Fourth Amendment because that Amendment is designed not merely to redress the prohibited intrusion, but to prevent that intrusion prior to its occurrence. Chimel v. California, *supra*, 395 U.S. 752, 766 n. 12, 89 S.Ct. 2034.

We agree with the Government's observation that Dionisio v. United States, *supra*, and Davis v. Mississippi, *supra*, are not precise precedent because the determination we must make herein of the reasonableness of the seizure can only be decided in the concrete factual context of each individual case. Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The Government in this proceeding makes no argument to indicate why the type of seizure that it is seeking is reasonable. Rather, it indicates simply that the Fourth Amendment is satisfied with a showing of probable cause and that this requirement for probable cause has been fully met by the return of the indictment herein.

The strict "probable cause" test would, however, appear not to be absolutely equivalent to a "reasonableness" test, although it is not entirely clear precisely at what points in their parameters these two tests diverge in scope or effect. In *Dionisio*, where, as here, the Court was dealing with a situation where no warrants would be involved, both the Government and the appellants argued that the test to determine the Fourth Amendment validity of grand jury subpoenas for voice exemplars was one of probable cause. The Seventh Circuit disagreed and stated that the Fourth Amendment not only prohibits the issuance of warrants without probable cause, "but also prohibits searches and seizures which are unreasonable." The Court thus apparently manifested its belief that the test of "probable cause" required for the issuance of warrants may be different from the test of "reasonableness" in a situation where no warrant is involved. It is possible, however, that these two yardsticks for measuring the constitutionality of a search and seizure are in fact substantively identical and are merely designed to apply in the differing situations of warranted versus warrantless searches. This conclusion is suggested by the Supreme Court's statement that it "has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution." Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). The foregoing language does not, of course, preclude the conclusion that a "reasonable search" may require more than "probable cause" in certain circumstances.

Assuming, as the Government suggests, that the test to be applied is simply one of probable cause, the Government's sole basis for submitting that probable cause does in fact exist in this case for the issuance of the proposed order is the fact that an indictment charging these defendants with conspiracy has issued. For the proposition that the Fourth Amendment's requirement of probable cause is met by the returning of such an indictment, the Government cites Giordenello v. United States, 357 U.S. 480, 487, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) and United States v. Beyer, 426 F.2d 773, 774 (2d Cir. 1970).

Neither of these cases, however, dealt with the issue of probable cause for a specific search, but rather each dealt solely with the probable cause needed for an arrest warrant to issue.

■ The Supreme Court stated in *Giordenello* that a warrant for arrest can be based solely upon an indictment because the grand jury's determination that probable cause existed for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person so charged. We fully agree with this conclusion because, before the grand jury may issue the indictment in the first instance, it must be convinced that probable cause exists that the person so charged committed an offense against the State. Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); United States v. Levinson, 405 F.2d 971 (6th Cir. 1968), cert. denied, Strang v. United States, 395 U.S. 906, 89 S.Ct. 1746, 23 L.Ed.2d 219 (1969). This test, if not identical, is very similar to the probable cause test applied by a Commissioner in issuing a warrant for arrest, Rule 4, Fed.R.Crim.P. It is completely logical then to conclude that the grand jury's finding of probable cause is equally as valid as the similar finding made by a Commissioner. But the finding of probable cause for arrest of an individual that accrues from his being indicted does not, however, become the equivalent of a finding of probable cause for a warrant to search that person's home, his car, or his business office. Probable cause must likewise be shown for any of these searches (except, of course, as regards a search incident to a lawful arrest). This distinction is the same as applies in the traditional warrant situation: the mere fact that probable cause has been shown that authorizes a proper warrant of arrest of an individual does not authorize the arresting officer to search beyond the limits of a search incident to that arrest. Chimel v. California, *supra.* A specific showing of probable cause in addition to that shown for the arrest warrant is needed before this search may be properly authorized.

Applying these rules to the instant case, it becomes evident that the indictment of these defendants for conspiracy authorized an arrest warrant to be issued against them absent any additional showing of probable cause for arrest, but, without a further showing of probable cause to authorize a specific search or seizure, the seizure sought by the Government cannot constitutionally be authorized. The proposition derived by the Government from the two cases it cites is correct only in that probable cause for an arrest warrant is supplied by an indictment. These cases, however, have no application whatsoever to the issue of whether an indictment likewise presents probable cause for a specific search not incident to that arrest. We have concluded on the facts of this case that it does not.

■ The logic of that conclusion is indicated in the factual circumstances of this case. The three defendants involved in this petition, as well as others from whom the Government seeks exemplars, have not been indicted for forging any documents. It is obvious that the grand jury did not reach the conclusion that probable cause existed to indict these defendants for any acts of forgery. Rather, as indicated, these defendants are each charged solely in the conspiracy count. No new or additional reasons to suggest probable cause have been proffered by the Government. Although the Government states that it needs these exemplars to prove its case, it is obvious that the Government here, like the grand jury in *Dionisio*, is uncertain who wrote or uttered certain statements and is seeking exemplars so as to make this determination. Without some showing of probable cause on the part of the Government to indicate why these exemplars should be ordered, we decline to order the defendants to furnish them because to do so without such a showing would violate their Fourth Amendment rights. By so ruling, we do not mean

to suggest that we are precluding the Government from showing at any time the requisite probable cause for such an order. We hold only that it has not yet done so.

Even if the probable cause test is not the precise constitutional yardstick that should be utilized in ruling upon the Fourth Amendment issue presented by the Government's petition, the foregoing comments apply equally well to any discussion of the "reasonableness" of the search and seizure proposed herein. Just as in Davis v. Mississippi, where the police detained and fingerprinted a large number of Negro youths in their investigation of an alleged rape, and as in *Dionisio*, where the grand jury issued subpoenas for twenty persons to provide voice exemplars, we are presented with a situation where it is obvious that the Government is at present incapable of connecting certain evidence with particular individual(s) and is seeking to remedy its difficulties by a fishing expedition of seizures from every person who may have had any connection with the alleged substantive violations of law. If the grand jury had charged the defendants involved in this petition in any of the substantive counts, the question of "reasonableness" might be different. But as the grand jury could do no more than conclude that these defendants conspired to violate the law, we conclude that any seizure of the physical characteristics of these defendants would have the same invidious effect on Fourth Amendment rights as the practices condemned in *Davis* and *Dionisio*. The Government has not proffered one fact that enables us to conclude that these defendants and other individuals from whom it seeks exemplars were involved with any substantive violations of the law relating to their handwriting. Unless and until the Government provides some basis that is, at the least, akin to a showing of probable cause which would enable us to conclude that the proposed seizures would be reasonable, we remain with no option but to conclude that they would in fact be unreasonable. We indicate again

that we are not precluding the Government from sharing with us whatever knowledge it has in its possession concerning these defendants upon which we would be capable of concluding that probable cause exists to believe that they were involved with substantive violations of law relating to their handwriting and that the proposed seizures, therefore, would not be unreasonable.

■ Although exemplars might very well make it significantly easier for the Government to prove its case and determine who in fact was the maker of certain signatures which its handwriting experts have been unable to connect to an author, it nevertheless remains axiomatic that the requirements of the Fourth Amendment cannot be abrogated in the name of law enforcement. Berger v. State of New York, 388 U.S. 41, 62, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The concept that the legitimate interests of society are best maintained and promoted irrespective of the methods selected to achieve what those in authority conceive to be those interests is not new. Periodically in our history, "true believers" have urged that their ends justified whatever means were necessary to achieve them or that the exigencies of the moment demanded abrogation or diminution of the fundamental rights of a few in the interests of the many. It is sufficient to note that the framers of the Bill of Rights obviously thought the contrary. As the Supreme Court has said and frequently held, "It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." Byars v. United States, 273 U.S. 28, 32, 47 S.Ct. 248, 71 L.Ed. 520 (1927).

In summary, the Government's sole response to the Fourth Amendment challenge to its petition for the compelled exemplars is that "the Fourth Amendment requirement of probable cause has been met by the returning of the indictment." We have already indicated why, in the context of this particular case, we cannot accept this argument as to the specific seizures here requested. We

conclude, therefore, that the petition to compel the defendants to provide handwriting exemplars would, if granted at this time, violate their Fourth Amendment guarantees.

The Government's petition is denied. An appropriate order will enter.