**UNITED STATES of America,
Plaintiff,**

v.

**Melvin BAILEY et al., Defendants.**

**No. 71 CR. 368.**

United States District Court,
N. D. Illinois, E. D.

Oct. 22, 1971.

William J. Bauer, U. S. Atty., Samuel J. Skinner, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

James D. Montgomery, Chicago, Ill., for defendants.

**1352**

## MEMORANDUM OPINION

WILL, District Judge.

The initial issues presented by defendants' motions to suppress handwriting exemplars given by them to the grand jury that brought the instant indictment against them are (1) did the decision of the United States Court of Appeals for the Seventh Circuit in In Re Dionisio, 442 F.2d 276 (7th Cir. 1971) announce a new rule of law as opposed merely to applying an old rule of law to new factual circumstances and, if the answer to this question is affirmative, (2) should Dionisio be applied retroactively to actions taken by grand juries prior to the date of decision. If the answer to the latter question is negative, no other issues relating to the Fourth Amendment need be considered.

Certain of the petitioning defendants are charged with the substantive offense of defrauding the United States government, in violation of 18 U.S.C. § 1001 and 42 U.S.C. § 2703, by the making of certain allegedly fraudulent written statements and forged instruments. In addition, all defendants are charged with conspiring in this way to defraud the United States government in violation of 18 U.S.C. § 371. Each of the moving defendants, under varying circumstances, provided the Federal Bureau of Investigation, acting either as an investigatory agency or as the agent of the grand jury, with the handwriting exemplars he seeks here to have suppressed. All exemplars were provided in the period from September 16, 1970, through March 2, 1971. Some of the defendants provided their exemplars only after being ordered to do so by the Chief Judge and another District Judge of this Court, who granted the motions of the government for orders directing then unindicted defendants to provide handwriting exemplars for the grand

jury. On March 25, 1971, the Seventh Circuit decided Dionisio, holding that, before a grand jury may compel a witness and possible defendant to provide it with voice exemplars, some showing of the reasonableness of this type of search and seizure must be made to satisfy the requirements of the Fourth Amendment.

### I

■ The initial issue which arises is whether or not Dionisio is a newly enunciated constitutional standard. If it is, this Court is required to decide whether it should be applied prospectively only or applied to all similar types of seizures, irrespective of the date of the seizure. If Dionisio is nothing more than another application to a new factual situation of an existing constitutional standard, on the other hand, then we will not be presented with the issue of retroactivity or lack thereof, for it will be the older principle which we would be enforcing and no question of retroactivity would be involved. A review of Dionisio and prior case law, therefore, is mandatory.

The most significant pre-Dionisio decision to which we must look is Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). In that case, the police detained and fingerprinted a large number of Negro youths in the course of investigating an alleged rape when the assailant was described only as a Negro youth. The Supreme Court invalidated a conviction derived from the use of the fingerprints so obtained, ruling that such an investigatory technique constitutes an unreasonable seizure under the Fourth Amendment. Thus, after Davis, it was patently clear to all law enforcement officials that, without any showing of probable cause, they could not effect a dragnet of all people whom they suspected might have violated the law to obtain exemplars of their physical characteristics.[1] Based primarily on

---

1. We believe it appropriate at this point to indicate, as we did in our prior opinion on this subject in this case, United States v. Bailey, 327 F.Supp. 802 (N.D. Ill.1971), that we believe no conceptual

differences exist between any form of exemplars that deal with physical characteristics, such as voice, handwriting, and fingerprint exemplars. Nor do any of the parties so argue.

this decision, the Seventh Circuit concluded in *Dionisio* that *Davis* applies with the same force to grand jury investigations as it does to police investigations.

The defendants contend that *Davis* plus older Supreme Court cases dealing with the relationship of the grand jury and the Fourth Amendment [2] together render perfectly clear the proposition that whatever the police may not do because of the interdictions of the Fourth Amendment, neither may the grand jury. Thus, they contend, *Dionisio* added nothing to the law and no need exists, therefore, for this Court to determine whether or not it applies retroactively.

We do not agree with the defendants' conclusion. We believe, as did the Seventh Circuit, that the conclusion reached in *Dionisio* is inescapable. But that does not mean that the decision was not a significant step forward in clarifying the application of the Fourth Amendment to searches and seizures by grand juries. The Supreme Court in *Davis* concluded that the police may not round up all possible suspects on mere suspicion and compel them to provide exemplars of their physical characteristics in the hope that the exemplars will provide incriminating evidence. The Seventh Circuit concluded that the same restrictions apply to a grand jury. It is obvious, however, that *Davis*, prior to *Dionisio*, applied only to police actions. Whether or not those same restrictions applied to grand juries, which are not wholly identifiable with any one of the three traditional branches of government, In Re April 1956 Term Grand Jury, 239 F.2d 263 (7th Cir. 1956), as opposed to the police or the F.B.I., which clearly have no connections with the judiciary, remained to be resolved in this Circuit until *Dionisio*. Although *Dionisio* did not reverse a prior rule which allowed grand juries to extract handwriting exemplars notwithstanding the Fourth Amendment, it is nevertheless clear that this decision did clarify the application of the Fourth Amendment and *Davis* to grand juries, placing them on the same plane as any other public investigative body.

The *Dionisio* opinion itself reflects that the Seventh Circuit was well aware it was announcing a new principle and rejecting a contrary and prior accepted rule in at least one other Circuit. The Court stated: "It may be argued that the fourth amendment applies only to overbroad grand jury subpoenas calling for documentary evidence." 442 F.2d at 279. In support of this observation, the Court cited In Re Dymo Industries, Inc., 300 F.Supp. 532 (N.D.Cal.1969), aff'd, United States v. Dymo Industries, Inc., 418 F.2d 500 (9th Cir. 1969), cert. denied, 397 U.S. 937, 90 S.Ct. 946, 25 L. Ed.2d 116 (1970).[3] In *Dymo*, the District Court and the Ninth Circuit squarely rejected the contention that seizures made by a grand jury could be constitutionally accomplished only upon a showing of probable cause and concluded that the Fourth Amendment's only application to grand juries deals with overbroad documentary subpoenas. This view of the relationship of the Fourth Amendment to grand juries was rejected by the Seventh Circuit in *Dionisio*.

Based upon the foregoing, we conclude that the Seventh Circuit announced a new constitutional principle in *Dionisio* that equated the grand jury to the police so far as the Fourth Amendment is concerned. Only after this rule was announced, did the proscriptions of *Davis* against dragnet seizures by police become equally binding upon grand juries in this Circuit. We conclude, therefore, that we are compelled to determine the date from which *Dionisio's* mandate is to be applied. Linkletter v. Walker, 381

---

2. *See, e. g.,* Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1919).

3. The decisions in *Dymo* were rendered at all levels subsequently to *Davis*.

U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

We have already indicated our view that *Dionisio* is a logical extension of *Davis*. We believe it also to be a necessary extension if *Davis* is not to become substantially meaningless. Under the rule of *Davis*, police may not sweep the streets to obtain evidence of a crime because to do so

> * * * would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry * * *. Davis v. Mississippi, 394 U.S. at 726–727, 89 S.Ct. at 1397.

If *Dionisio* is not valid, all that needs to be done to avoid the interdictions of *Davis* is to empanel a grand jury and have it direct law enforcement officers to round up all possible suspects and compel each of them to provide the appropriate exemplars. It would thus be possible to do indirectly that which is prohibited from being done directly. The dragnet, the harassment and ignominy would be no less offensive and violative of the personal security of our citizens because it was being done by the police under grand jury instructions than if done as in *Davis*.

■ There is yet another reason, perhaps more compelling than the one above, for concluding that the teachings of *Davis* must apply to grand juries. Grand juries have traditionally played two roles in Anglo-American jurisprudence, with the two functions taking the grand jury conceptually in opposite directions. On the one hand, the investigation of possible offenses is clearly a prime function of the grand jury. United States v. Neff, 212 F.2d 297 (3rd Cir. 1954); United States v. Cleary, 265 F.2d 459 (2d Cir. 1959), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959). On the other hand, the grand jury has traditionally been considered to be the primary bulwark of the innocent against hasty, malicious and oppressive prosecution and persecution. It serves the invaluable function of standing between the accuser and accused. Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962).

It would be ironic indeed if the protections guaranteed to the people of this nation by the Constitution and the Bill of Rights are to become less meaningful merely because the investigative function of the grand jury is pushed to such a level of importance over its prophylactic function of protection of the innocent that, under the aegis of the grand jury, law enforcement officers may do precisely the same acts they are prohibited from doing directly. If we reach that result, the grand jury becomes not the great protector but the grand inquisitor. We cannot believe that the framers of the Bill of Rights who drafted the Fifth Amendment's requirement of grand jury indictments and the Fourth Amendment's protection of the individual from unreasonable searches and seizures could have intended this result.

## II

Having determined that *Dionisio* did state a new constitutional principle, we must now resolve the issue of whether it should be applied to seizures of exemplars by a grand jury allegedly without probable cause that occurred prior to March 25, 1971, the date of the *Dionisio* decision. A review of the cases that discuss the question of retroactivity indicates that the confusion that once covered this field appears to be diminishing as more general principles are being announced by the Supreme Court for resolving the issue of retroactivity in varying circumstances.

In Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), the Supreme Court summarized its rules dealing with the retroactivity issue. The Court stated:

> Ever since Linkletter v. Walker, 381 U.S. 618, 629 [85 S.Ct. 1731, 1737, 14

L.Ed.2d 601] (1965) established that "the Constitution neither prohibits nor requires retrospective effect" for decisions expounding new constitutional rules affecting criminal trials, the Court has viewed the retroactivity or nonretroactivity of such decisions as a function of three considerations. As we most recently summarized them in Stovall v. Denno, 388 U.S. 293, 297 [87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199],

> The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

Foremost among these factors is the purpose to be served by the new constitutional rule. This criterion strongly supports prospectivity for a decision amplifying the evidentiary exclusionary rule. 394 U.S. at 248–249, 89 S.Ct. at 1033.

Very recently, the Supreme Court has affirmed its prior rejection of the idea that all new interpretations of the Constitution must be considered to have always been the case, Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). In *Williams*, the Court dealt with the issue of the retroactivity of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), a case dealing with a new application of Fourth Amendment principles. The Court concluded in *Williams* that new standards under the Fourth Amendment have been promulgated to deter police invasions of individual privacy, not to improve the accuracy of fact-finding at a criminal trial, that such Fourth Amendment rules should therefore be applied only prospectively, and that the rule of law announced in *Chimel* would be applied only to searches occurring after *Chimel's* date of decision.

The Seventh Circuit, following *Williams* has also held that new Fourth Amendment rules do not apply to searches and seizures before the dates of decision. In United States of America ex rel. Clarence Mayfield v. Frank J. Pate, Slip Opinion No. 18381 (7th Cir. 1971), the Seventh Circuit refused to apply the new rule of law announced in United States ex rel. Pugh v. Pate, 401 F.2d 6 (7th Cir. 1968), cert. denied, 394 U. S. 999, 89 S.Ct. 1590, 22 L.Ed.2d 777 (1969), to any searches occurring prior to the date of decision of *Pugh*, which had held that the use of a fictitious name on an affidavit for a search warrant invalidates the warrant.

We do not view the Fourth Amendment issues herein to be any different than those facing the Supreme Court in *Williams* and our Court of Appeals in *Mayfield*. All three cases involve the exclusionary rule as applied to deter police conduct that affects the personal security of individuals which is protected by the Constitution; none of these cases involve a doctrine designed to overcome an aspect of a criminal trial that substantially impairs its truth-finding function or that raises serious questions about the accuracy of a potential verdict. Accordingly, we have no choice but to conclude that *Dionisio* does not apply to any handwriting exemplars seized by the grand jury prior to March 25, 1971.

This Court recognizes the position in which we are placed in that we have strongly endorsed the position taken by the Seventh Circuit in *Dionisio*, yet refuse to grant the benefits of that decision to the defendants involved in this motion who just happened to provide their exemplars prior to that decision, although they will be tried subsequently. Had these defendants been the first in this Circuit to raise the issue, they would, by happenstance, be the ones to receive the benefit of this new rule. This consideration, however, may not be taken into account by this Court. The Supreme Court faced this issue in Stovall v. Denno, 388 U.S. 293, 87 S.Ct.

1967, 18 L.Ed.2d 1199 (1967), where it refused retroactive application of the new rules announced on the same day in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). In *Stovall,* the Court stated:

> We recognize that Wade and Gilbert are, therefore, the only victims of pretrial confrontations in the absence of their counsel to have the benefit of the rules established in their cases. That they must be given that benefit is, however, an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum. * * * Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making. 388 U.S. at 301, 87 S.Ct. at 1972.

Based upon the foregoing, we conclude that the defendants who gave exemplars to the grand jury are not entitled to have them suppressed on the basis of the Fourth Amendment.

### III

■ The defendants assert three other grounds for the suppression of their handwriting exemplars, none of which we believe merits much discussion. They initially contend that the taking of the exemplars violated their Fifth Amendment protections. As we stated in our prior opinion, decisions of the United States Supreme Court clearly indicate that the Fifth Amendment does not prohibit the compelling or using of such exemplars and that handwriting is not a personal communication of a defendant but rather "an identifying personal characteristic." United States v. Wade, *supra,* 388 U.S. at 222–223, 87 S. Ct. 1926; Gilbert v. California, *supra,* 388 U.S. at 266–267, 87 S.Ct. 1951; *cf.,* Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

■ The defendants next contend that they were not advised of their right to have counsel present during the examination and procurement of the exemplars, although they appear to have abandoned this claim because of their failure to respond in their reply brief to the government's contentions to the contrary. It is clear that this issue has been settled against the defendants. In Gilbert v. California, *supra,* the Supreme Court specifically met and refuted this contention. The Court stated:

> The taking of the [handwriting] exemplars was not a "critical" stage of the criminal proceedings entitling petitioner to the assistance of counsel. Putting aside the fact the exemplars were taken before the indictment and appointment of counsel, there is minimal risk that the absence of counsel might derogate from his right to a fair trial. * * * If, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for analysis and comparison by government and defense handwriting experts. Thus, "the accused has the opportunity for a meaningful confrontation of the [State's] case at trial through the ordinary processes of cross-examination of the [State's] expert [handwriting] witnesses and the presentation of the evidence of his own [handwriting] experts." 388 U.S. at 267, 87 S.Ct. at 1953.

■ The defendants finally contend that, irrespective of the power of the grand jury to seize exemplars, it was not empowered to appoint agents to receive and examine them. In this case, the grand jury ordered certain of the defendants to provide exemplars to the Federal Bureau of Investigation. We believe the defendants' contention to be

meritless. To require the grand jury itself to analyze, without the aid of expert analysis, the handwriting exemplars that have been seized consistent with the Fourth Amendment would render meaningless the even limited power to order exemplars. The F.B.I. and their agents were best qualified, upon completion of their analysis of the extracted exemplars, to assist the grand jurors in determining whether certain items were forgeries and whether there was probable cause to believe that a particular person or persons wrote the forgeries. Such analysis is incapable of being performed by lay members of a grand jury.

Having reviewed the contentions previously discussed in support of the motions to suppress, and finding none to be meritorious, the motions based upon the grounds discussed herein must be denied.

IV

Finally, it appears that some of the defendants may be arguing that they involuntarily were coerced into providing handwriting exemplars to the Federal Bureau of Investigation, without action or orders either of the grand jury or of judges of this Court. Apparently, these defendants gave exemplars prior to any action to compel exemplars having been initiated. Such a seizure would be judged as to its validity on traditional standards such as whether or not it was incident to a lawful arrest or was voluntarily consented to. Because of a lack of clarity in the moving and supporting papers, we are uncertain whether this basis is being suggested by any defendant as a ground for suppression of the exemplars. If it is, a factual hearing will have to be held before we can rule. Therefore, any defendant who gave exemplars prior to any order requiring him to do so and who desires to raise this ground as a basis for suppression must notify this Court immediately. If we receive no further motions to this effect, we shall presume that no defendant in fact is raising this ground.

An order will enter consistent with the foregoing.