**In the Matter of the Grand Jury Impaneled November 4, 1970, Dean RICCARDI, Witness.**

United States District Court,
D. New Jersey.

Feb. 3, 1972.

Herbert J. Stern, U. S. Atty., by Lawrence S. Horn, Asst. U. S. Atty., for the Government.

Querques, Isles & Weissbard, by Michael A. Querques, Orange, N. J., for Dean Riccardi.

## OPINION

WHIPPLE, District Judge:

This matter is before the Court pursuant to the government's application for an order compelling a Grand Jury witness to furnish handwriting exemplars. The prime issue raised is whether the order would, if granted, contravene the witness's Fourth Amendment rights to be free from unreasonable searches and seizures.

On November 17, 1971 Dean Riccardi, in compliance with a subpoena, appeared before a United States Grand Jury. After having been advised of his rights, he was requested by the Assistant United States Attorney to supply handwriting exemplars. He refused to do so, relying mainly upon the Fourth Amendment.

Certain facts are uncontroverted. Riccardi is a "target" of a federal Grand Jury, investigating an alleged credit card forgery ring. *See,* United States v. Addonizio, 313 F.Supp. 486 (D.N.J.1970); aff'd, 448 F.2d 100 (3d Cir. 1971). The exemplars sought will be used by the Grand Jury and government as a standard to determine whether Riccardi's handwriting matches the allegedly forged signatures. A reasonable alternative to ordering the exemplars has been offered by Riccardi. He is willing to furnish the Grand Jury and government with photostatic copies of signatures made by him in the normal course of events.

Riccardi contends initially that an order compelling him to furnish handwriting exemplars would violate his Fifth Amendment privilege against self-incrimination. He argues that in the event the ordered exemplars match the alleged forgeries it would prove the *corpus delicti* of the crime alleged thus amounting to a coerced confession of his guilt. The present status of the law, however, renders the Fifth Amendment inapplicable.

■ The privilege against self-incrimination reaches only communicative or testimonial statements rather than "identifying physical characteristics" or compulsion making the accused a source of "real or physical evidence." Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Gilbert v. California, 388 U.S. 263, 266, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Because a handwriting exemplar is physical evidence it falls without the strictures of the Fifth Amendment. Gilbert v. California, supra; United States v. John Doe, 405 F.2d 436, 438 (2d Cir. 1968); Calloway v. Central Charge Service, 440 F.2d 287, 289 (D.C.Cir.1971); United States v. Beshers, 437 F.2d 450, 451 (9th Cir. 1971). Such a distinction has not gone without criticism. United States v. Green, 282 F.Supp. 373 (S.D.Ind.1968); *see especially,* Dann, The Fifth Amendment Privilege Against Self-Incrimination: Extorting Physical Evidence From A Suspect, 43 S.Cal.L. Rev. 597 (Fall 1970). I, likewise, find it difficult to draw a meaningful constitutional distinction based upon the Fifth Amendment between a coerced confession coming from an accused's mouth and one coming from his hand. Nevertheless, this Court is bound by the decisions of the United States Supreme Court and, therefore, must reject Riccardi's Fifth Amendment claim.

Riccardi's second contention is that if the handwriting exemplars are ordered, it would affix the stamp of judicial approval to an unreasonable search and seizure in violation of his Fourth Amendment guarantees. This is the first time in this Circuit that a Court has been asked to decide such a contention. Two steps are involved in its resolution: (1) whether a compelled handwriting exemplar falls within the search and seizure provisions of the Fourth Amendment, and (2) assuming an affirmative answer to the first inquiry, whether ordering of the handwriting exemplars in this case would sanction a Fourth Amendment violation.

■ Physical evidence which does not come within the scope of the Fifth Amendment may nevertheless be subject to the requirements of the Fourth. Thus,

in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), the Court held that fingerprint evidence, an element of an individual's physical characteristics, should not have been admitted into evidence since it had been obtained under unreasonable circumstances thus violating the Fourth Amendment. The Court stated:

"* * * [W]e find no merit in the suggestion * * * that fingerprint evidence, because of its trustworthiness, is not subject to the proscriptions of the Fourth and Fourteenth Amendments. Our decisions recognize no exception to the rule that illegally seized evidence is inadmissible at trial, however relevant and trustworthy the seized evidence may be as an item of proof. The exclusionary rule was fashioned as a sanction to redress and deter overreaching governmental conduct prohibited by the Fourth Amendment. To make an exception for illegally seized evidence which is trustworthy would fatally undermine these purposes." (at 723–4, 89 S.Ct. at 1396).

That handwriting exemplars rather than fingerprints are sought is of no consequence insofar as the application of the Fourth Amendment is concerned since both involve invasions of a person's privacy. The identical result was reached in United States v. Bailey, 327 F.Supp. 802, 804–5 (N.D.Ill.1971), wherein the court stated:

"As we can see no distinction between fingerprints, voice exemplars, and handwriting exemplars, and because the Government does not contend to the contrary, we conclude that the ordering of handwriting exemplars is subject to the Fourth Amendment's prohibition against unreasonable searches and seizures." *Accord,* In re Dionisio, 442 F.2d 276 (7th Cir. 1971); United States v. Long, 325 F.Supp. 583 (W.D.Mo.1971).

This Court is in agreement with the foregoing authorities and holds that the Fourth Amendment must be consulted where the government applies for an order to compel the taking of handwriting exemplars.

This Court's second focus of inquiry is whether the circumstances surrounding the request for exemplars are reasonable. This inquiry is required because, unlike the absolute bar forged by the Fifth Amendment, the Fourth Amendment proscribes only those searches and seizures which are unreasonable. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Desist v. United States, 394 U. S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); United States v. Bailey, 327 F. Supp. 802, 803 (N.D.Ill.1971). That the Grand Jury process is involved does not preclude application of the Fourth Amendment. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); In re Dionisio, 442 F.2d 276, 279 (7th Cir. 1971); Mara v. United States, 454 F.2d 580 (7th Cir. 1971).

The Fourth Amendment refers to two standards for determining the constitutionality of a search and seizure, *viz:* "probable cause" and "reasonableness." This Court believes that the broader standard of "reasonableness" should be applied to this case. As the Court in In re Dionisio, 442 F.2d 276, 280 (7th Cir. 1971), stated:

"The fourth amendment, however, not only proscribes the issuance of warrants without probable cause—a proscription not applicable here because no warrant was involved—but also prohibits searches and seizures which are unreasonable. *It is the proper application of the standard of reasonableness to seizures in the grand jury context with which we must be concerned.*"

In applying the standard of "reasonableness" a precise formula cannot be fixed. This Court must examine the totality of circumstances in reaching its decision. Chimel v. California, 395 U.S. 752, 765, 89 S.Ct. 2034, 23 L. Ed.2d 685 (1969). While a showing of probable cause has been said to be a

"minimum requirement for a reasonable search permitted by the Constitution," Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970), such a showing is not necessarily a *sine qua non* of reasonableness in the Grand Jury context. Mara v. United States, 454 F.2d 580 (7th Cir. 1971). As the *Mara* Court stated:

"Reasonableness in [the Grand Jury] context is not necessarily synonymous with probable cause. Like the reasonableness requirement applied to a grand jury subpoena to produce documentary evidence, a reasonable direction to furnish exemplars requires that the Government's affidavit show that the grand jury investigation was properly authorized, for a purpose Congress can order, that the information sought is relevant to the inquiry, and that the grand jury's request for exemplars is 'adequate, but not excessive, for the purposes of the relevant inquiry.' * * * Because a request for exemplars is distinguishable from a subpoena duces tecum—indeed it is a unique phenomenon—we interpret 'adequate, but not excessive' to mean that the Government must affirmatively show that the grand jury process is not being abused."

This Court interprets that requirement to mean a showing in the Grand Jury context of something less than probable cause but something more than a "general fishing expedition." If this Court were to order the exemplars in this case it would sanction a governmental abuse of the Grand Jury process thus violating the Fourth Amendment.

 Based upon the uncontroverted facts Riccardi is a "target" of a Grand Jury investigation. Yet, the government has stated that its investigation gives rise to nothing more than "mere suspicions." This Court cannot permit the Grand Jury to use its subpoena power to invade one's personal security simply because the government nakedly states the witness is a potential defendant. To do so would amount to a violation of Riccardi's Fourth Amendment rights. In re Dionisio, 442 F.2d 276, 281 (7th Cir. 1971); Mara v. United States, 454 F.2d 580 (7th Cir. 1971). There are two additional factors which illustrate the patent unreasonableness of the government's request. This Court is impressed with the fact that if the exemplars taken matched the forgeries, then Riccardi would have been compelled by order of this Court to prove the very body of the crime alleged, *viz:* forgery of credit cards. Furthermore, as noted previously, the government has been offered photostatic copies of Riccardi's signatures. These specimens would necessarily be more accurate, having been spontaneously made and without any motive to disguise. Clearly, the invasion of one's privacy should not be ordered where the very information sought can be easily acquired by other means. Mara v. United States 454 F.2d 580 (7th Cir. 1971).

In light of the foregoing, the government's application for an order compelling handwriting exemplars is denied. Counsel for Riccardi shall submit an appropriate order in conformity with the preceding opinion.