SOUTHERN PACKAGING AND STOR-AGE COMPANY, INC., Appellee,

v.

UNITED STATES of America, Appellant.

SOUTHERN PACKAGING AND STOR-AGE COMPANY, INC., Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 79–1056, 79–1057.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1980.

Decided April 24, 1980.

William W. Goodrich, Jr., Washington, D. C. (Matthew S. Perlman, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., David W. Keller, Jr., McGowman, Nettles, Keller & Eaton, P. A., Florence, S. C., on brief), for Southern Packaging and Storage Co., Inc.

Gail V. Coleman, U. S. Dept. of Labor, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Ronald G. Whiting, Associate Sol., Jack Diamond, U. S. Dept. of Labor, Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., William Kanter, Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., on brief), for the U. S.

Before WINTER and RUSSELL, Circuit Judges, and JONES, District Judge.*

SHIRLEY B. JONES, District Judge:

Southern Packaging and Storage Company, Inc., has for over thirty-five years assembled various component parts of the "Meal Combat Individual" (MCI) field rations (formerly C rations) pursuant to government contracts. Those contracts were issued subsequent to bid solicitations prepared by the Defense Logistics Agency and the Defense Personnel Support Center. The solicitation contained a wage determination prepared by the Employment Standards Administration of the Department of Labor which indicated that the Service Contract Act, 41 U.S.C. § 351, was applicable,[1] the locality for the minimum wage determination was "nationwide" and the job description was "assembly of field rations."

The district court determined, after a trial without a jury, that the Service Contract Act was indeed applicable to the work performed by Southern Packaging. *Southern Packaging and Storage Company, Inc. v. United States of America*, 458 F.Supp. 726, 731–32 (D.S.C.1978). The court also held that the term "locality" as used in the Service Contract Act and as applied in this bid solicitation referred to "the standard metropolitan statistical area, if available, or the specific county, where the bidding party's plant or facility is located." 458 F.Supp. at 735.

The Department of Labor appeals, contending that in the context of this solicitation it did not err in determining nationwide minimum wage rates. Southern Packaging cross-appeals, asserting that the district court erred in not construing its assembly operations as manufacturing within the Walsh-Healey Act and regulations, 41 C.F.R. § 50–206.52 (1979), which would have rendered the provisions of the Service Contract Act inapplicable, 41 U.S.C. § 356(2).

---

* Honorable Shirley B. Jones, United States District Judge for the District of Maryland, sitting by designation.

1. Prior to the bid solicitation in question, the Department of Labor had issued wage determinations for MCI contracts under the Walsh-Healey Act, 41 U.S.C. § 35.

We find that the district court was correct on both questions and we affirm.[2]

The Service Contract Act[3] provides "protection of employees of contractors and subcontractors furnishing services to or performing maintenance service for Federal agencies." 1965 U.S. Code Cong. & Admin. News, pp. 3737, 3737; 1972 U.S. Code Cong. & Admin. News, p. 3534. Southern Packaging contends that it is a "manufacturer" within the Walsh-Healey Act[4] of the MCI procurements or, in the alternative, furnishes supplies, which also comes within the ambit of Walsh-Healey.

■ The district court described in detail the functions of Southern Packaging once it received the component parts shipped by the United States. The final end product is composed, for all practical purposes, from the material delivered to Southern Packaging. As the district court found, it is clear that Southern Packaging packages and assembles these component parts into the final product –the MCI ration kit. The regulations define manufacturer as a "person who owns, operates, or maintains a factory or establishment that produces on the premises the materials, supplies, articles, or equipment required under the contract and of the general character described by the specifications." 41 C.F.R. § 50–201.-101(a)(1) (1979). In light of the fact that

Southern Packaging does not produce any of the materials required under the contract, it cannot be construed as a manufacturer within the regulations.

Southern Packaging alternatively seeks to bring itself within the definition of "assembler." 41 C.F.R. § 50–206.52 (1979). "Assembly" means piercing or bringing together various interdependent or interrelated parts or components so as to make an operable whole or unit . . . . A firm which produces final items on its premises by assembling component parts, all or some of which have been purchased from others, will generally be considered to be a "manufacturer" where it performs a series of assembly operations utilizing machines, tools and workers which constitute substantial and significant fabrication or production of the desired product. § 50–206.52(b)(1).

\* \* \* \* \* \*

Thus, the determination of whether a bidder proposing to assemble a final product from component parts is an eligible manufacturer must rest on whether the bidder has demonstrated an independent ability, with its plant, equipment and personnel, to perform a significant or substantial portion of the manufacturing operations and efforts required in producing

2. We, as did the district court, realize that the Department of Labor's interpretation of the Service Contract Act and the Walsh-Healey Act is to be accorded some deference. However, "this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose and history." *Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (quoting *Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 799 n. 20, 58 L.Ed.2d 808 (1979)).

3. 41 U.S.C. § 351. Subsection (a) provides in part that "[e]very contract (and any bid specification therefor) entered into by the United States . . . in excess of $2,500, except as provided in section 356 of this title, whether negotiated or advertised, the principal purpose of which is to furnish services in the United States through the use of service employees" shall contain certain provisions.

4. 41 U.S.C. § 35 provides, in part:

In any contract made and entered into by any executive department, . . . for the manufacture or furnishing of materials, supplies, articles, and equipment in any amount exceeding $10,000, there shall be included the following representations . . .
(a) That the contractor is the manufacturer of or a regular dealer in the materials, supplies, articles, or equipment to be manufactured or used in the performance of the contract;
(b) That all persons employed by the contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract will be paid . . . not less than the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed on similar work or in the particular or similar industries or groups of industries currently operating in the locality . . . .

the final product for which the government contracted. § 50–206.52(b)(2).

\* \* \* \* \* \*

Firms which only perform minimal operations upon the item being procured cannot qualify as manufacturers. To allow any such bidder to do so would obviously frustrate the purpose of the [Walsh-Healey] Act. § 50–206.52(c).

\* \* \* \* \* \*

Packaging by itself does not constitute "assembly." § 50–206.52(d) (and examples cited therein).

All these facts were before the district court which held that Southern Packaging's operations were not sufficient to constitute manufacturing within the Walsh-Healey Act, that the products remained virtually unchanged but for the packaging process, and that any manufacturing done by Southern Packaging was of a "*de minimis* character." 458 F.Supp. at 732. Thus, the principal purpose of this contract was to furnish services within the meaning of the Service Contract Act. The regulations issued pursuant to this Act give credence to this finding. 29 C.F.R. § 4.111 (1979). 29 C.F.R. § 4.130 lists examples of types of service contracts, one of which is "packing and crating." *See Descomp, Inc. v. Sampson,* 377 F.Supp. 254, 261 (D.Del.1974). Based on the totality of the record, legislative history and statutory construction, we hold that the district court was correct in finding that Southern Packaging was not a manufacturer within the provisions of the Walsh-Healey Act, and thus not exempt from the Service Contract Act. 41 U.S.C. § 356(2).

■ As stated earlier, the Service Contract Act requires a provision indicating that minimum wages be paid "in accordance with prevailing rates for such employees in the locality . . . ." 41 U.S.C. § 351(a)(1). The Department of Labor asks this Court to allow it the flexibility to use nationwide data through a composite locality approach, thus necessitating only one wage determination, in compiling data on the prevailing minimum wage. The Department of Labor contends that such an approach is fairer in a solicitation of bids where, as in the present case, the bidding agency does not know, or care, where the contract will be performed. We are not persuaded in law or by common sense that the district court's interpretation of locality with regard to the contract *sub judice* was clearly erroneous.

■ Essentially, there are three reasons for this finding. First, as the Department of Labor indicates, in ninety-eight percent of the requested determinations, the Standard Metropolitan Statistical Area provides an appropriate base in determining the mean average of wages. It is only in one-half of one percent that the Department of Labor has used a nationwide minimum wage rate. There would not appear to be such an undue burden on the Employment Standards Administration to provide individual locality wage determinations in the one-half of one percent of the cases where the Department of Labor claims their composite approach is more expeditious. Second, locality has been defined as a "particular spot, situation or location." [5] Such a description, by common sense, hardly seems synonymous with nationwide. Third, the cases which construe the Walsh-Healey Act upon which the Department of Labor relies for the proposition that the district court should have interpreted locality herein as nationwide in scope are readily distinguishable. Locality as used in the Walsh-Healey Act, *Mitchell v. Covington Mills, Inc.,* 229 F.2d 506, 508 (D.C.Cir. 1955), *cert. denied,* 350 U.S. 1002, 76 S.Ct. 546, 100 L.Ed. 865 (1956), is not synonymous with locality as used in the Service Contract Act. This is clear on the face of the two statutes. *United States v. Deluxe Cleaners and Laundry, Inc.,* 511 F.2d 926, 928–29 (4th Cir. 1975).

Finally, the district court weighed the testimony of Mr. Camrath of the Service Wage Determination Division, who urged a flexible meaning of the term "locality" and rejection of the Standard Metropolitan Statistical Area usage. The district court rejected this testimony and gave locality its ordinary and common meaning. It adopted

5. Webster's Third New International Dictionary (1976).

the reasoning of the District Court for the District of Delaware in *Descomp, Inc. v. Sampson*, 337 F.Supp. 254 (D.Del.1974). In *Descomp*, the court held that keypunch operators were not "service employees within the meaning of the Act," despite the fact that Descomp provided a service. Thus, the Service Contract Act was not applicable. *Id.* at 264. The *Descomp* court stated that even if the Act did apply, the locality in which wage determinations should be made is where the work is to be performed. *Id.* at 265–66. It placed emphasis on the testimony of then Solicitor of Labor Charles Donahue, who testified in hearings before the Senate Subcommittee ·on Labor concerning the Service Contract Act that the term "locality" was to have a limited nature similar to the strict provisions of the Davis-Bacon Act (city, town, village).[6] While such restrictive construction of locality under the Service Contract Act would be untenable, the construction proposed by the Department of Labor is too expansive, too unwieldy, and too unfair. We agree with the district court's construction of locality under the facts of this case.[7] We are aware of *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1178–80 (D.C.Cir. 1973) and find it factually inapposite.

We find the remaining contentions to be without merit.

*AFFIRMED.*

---

**6.** Hearing before the Subcommittee on Labor of the Committee on Labor and Public Welfare, United States Senate, 89th Cong., 1st Sess., on H.R. 10238, pp. 11–13.

**7.** Although we affirm the district court's construction of locality under the facts of this case, we do not accept Southern Packaging's contention that national wage rates are never permissible under the Service Contract Act. A careful reading of the testimony of Solicitor Donahue suggests that neither the Solicitor of Labor nor Congress anticipated that nationwide competition for service contracts, which, unlike manufacturing contracts under the Walsh-Healey Act, are performed at predetermined sites in the vast majority of cases, would occur. We postulate that there may be the rare and unforeseen service contract which might be performed at locations throughout the country and which would generate truly nationwide competition. In such a case, national wage rates may be permissible, although we do not decide the point. This is not such a case, however. Although an invitation to bid was mailed to fifty-eight firms throughout the country, the Defense Personnel Support Center, based on past experience, was able to predict that the successful bid would come from one of twelve firms. As the district court reasonably found, the Department of Labor could easily have issued the twelve individual wage determinations originally requested.