# DAVIS v. MISSISSIPPI.

No. 645.   Argued February 26–27, 1969.—
Decided April 22, 1969.

*Melvyn Zarr* argued the cause for petitioner. With him on the brief were *Jack Greenberg, Michael Meltsner, Anthony G. Amsterdam,* and *Jack Young.*

*G. Garland Lyell, Jr.,* Assistant Attorney General of Mississippi, argued the cause for respondent. With him on the brief was *Joe T. Patterson,* Attorney General.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Petitioner was convicted of rape and sentenced to life imprisonment by a jury in the Circuit Court of Lauderdale County, Mississippi. The only issue before us is whether fingerprints obtained from petitioner should have been excluded from evidence as the product of a detention which was illegal under the Fourth and Fourteenth Amendments.

The rape occurred on the evening of December 2, 1965, at the victim's home in Meridian, Mississippi. The victim could give no better description of her assailant than that he was a Negro youth. Finger and palm prints found on the sill and borders of the window through which the assailant apparently entered the victim's home constituted the only other lead available at the outset of the police investigation. Beginning on December 3, and for a period of about 10 days, the Meridian police, without warrants, took at least 24 Negro youths to police headquarters where they were questioned briefly, fingerprinted, and then released without charge. The police also interrogated 40 or 50 other Negro youths either at police headquarters, at school, or on the street. Petitioner, a 14-year-old youth who had occasionally worked for the victim as a yardboy, was brought in on December 3 and released after being fingerprinted and routinely questioned. Between December 3 and December 7, he was interrogated by the police on several occasions—sometimes in his home or in a car, other times at police headquarters. This questioning apparently related primarily to investigation of other potential suspects. Several times during this same period petitioner was exhib-

ited to the victim in her hospital room. A police officer testified that these confrontations were for the purpose of sharpening the victim's description of her assailant by providing "a gauge to go by on size and color." The victim did not identify petitioner as her assailant at any of these confrontations.

On December 12, the police drove petitioner 90 miles to the city of Jackson and confined him overnight in the Jackson jail. The State conceded on oral argument in this Court that there was neither a warrant nor probable cause for this arrest. The next day, petitioner, who had not yet been afforded counsel, took a lie detector test and signed a statement.[1] He was then returned to and confined in the Meridian jail. On December 14, while so confined, petitioner was fingerprinted a second time. That same day, these December 14 prints, together with the fingerprints of 23 other Negro youths apparently still under suspicion, were sent to the Federal Bureau of Investigation in Washington, D. C., for comparison with the latent prints taken from the window of the victim's house. The FBI reported that petitioner's prints matched those taken from the window. Petitioner was subsequently indicted and tried for the rape, and the fingerprint evidence was admitted in evidence at trial over petitioner's timely objections that the fingerprints should be excluded as the product of an unlawful detention. The Mississippi Supreme Court sustained the admission of the fingerprint evidence and affirmed the conviction. 204 So. 2d 270 (1967). We granted certiorari. 393 U. S. 821 (1968). We reverse.

At the outset, we find no merit in the suggestion in the Mississippi Supreme Court's opinion that fingerprint evidence, because of its trustworthiness, is not subject to the proscriptions of the Fourth and Fourteenth

---

[1] The statement was not introduced at the trial.

Amendments.[2] Our decisions recognize no exception to the rule that illegally seized evidence is inadmissible at trial, however relevant and trustworthy the seized evidence may be as an item of proof. The exclusionary rule was fashioned as a sanction to redress and deter overreaching governmental conduct prohibited by the Fourth Amendment. To make an exception for illegally seized evidence which is trustworthy would fatally undermine these purposes. Thus, in *Mapp* v. *Ohio,* 367 U. S. 643, 655 (1961), we held that *"all* evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." (Italics supplied.) Fingerprint evidence is no exception to this comprehensive rule. We agree with and adopt the conclusion of the Court of Appeals for the District of Columbia Circuit in *Bynum* v. *United States,* 104 U. S. App. D. C. 368, 370, 262 F. 2d 465, 467 (1958):

> "True, fingerprints can be distinguished from statements given during detention. They can also be distinguished from articles taken from a prisoner's possession. Both similarities and differences of each type of evidence to and from the others are apparent. But all three have the decisive common characteristic of being something of evidentiary value which the public authorities have caused an arrested person to yield to them during illegal detention. If one such product of illegal detention is proscribed, by the same token all should be proscribed."

We turn then to the question whether the detention of petitioner during which the fingerprints used at trial were taken constituted an unreasonable seizure of his

---

[2] Fingerprint evidence would seem no more "trustworthy" than other types of evidence—such as guns, narcotics, gambling equipment—which are routinely excluded if illegally obtained.

person in violation of the Fourth Amendment. The opinion of the Mississippi Supreme Court proceeded on the mistaken premise that petitioner's prints introduced at trial were taken during his brief detention on December 3. In fact, as both parties before us agree, the fingerprint evidence used at trial was obtained on December 14, while petitioner was still in detention following his December 12 arrest. The legality of his arrest was not determined by the Mississippi Supreme Court. However, on oral argument here, the State conceded that the arrest on December 12 and the ensuing detention through December 14 were based on neither a warrant nor probable cause and were therefore constitutionally invalid. The State argues, nevertheless, that this invalidity should not prevent us from affirming petitioner's conviction. The December 3 prints were validly obtained, it is argued, and "it should make no difference in the practical or legal sense which [fingerprint] card was sent to the F. B. I. for comparison." [3]  It may be that it does make a difference in light of the objectives of the exclusionary rule, see *Bynum* v. *United States, supra,* at 371–372, 262 F. 2d, at 468–469,[4] but we need not decide the question since we have concluded that the prints of December 3 were not validly obtained.

---

[3] Brief for Respondent 8.

[4] The Government argued in *Bynum* that the controversy over the introduction in evidence of a particular set of fingerprints was "much ado over very little," because another set properly taken was available and might have been used. The Court of Appeals rejected this argument: "It bears repeating that the matter of primary judicial concern in all cases of this type is the imposition of effective sanctions implementing the Fourth Amendment guarantee against illegal arrest and detention. Neither the fact that the evidence obtained through such detention is itself trustworthy or the fact that equivalent evidence can conveniently be obtained in a wholly proper way militates against this overriding

The State makes no claim that petitioner voluntarily accompanied the police officers to headquarters on December 3 and willingly submitted to fingerprinting. The State's brief also candidly admits that "[a]ll that the Meridian Police could possibly have known about petitioner at the time . . . would not amount to probable cause for his arrest . . . ." [5] The State argues, however, that the December 3 detention was of a type which does not require probable cause. Two rationales for this position are suggested. First, it is argued that the detention occurred during the investigatory rather than accusatory stage and thus was not a seizure requiring probable cause. The second and related argument is that, at the least, detention for the sole purpose of obtaining fingerprints does not require probable cause.

It is true that at the time of the December 3 detention the police had no intention of charging petitioner with the crime and were far from making him the primary focus of their investigation. But to argue that the Fourth Amendment does not apply to the investigatory stage is fundamentally to misconceive the purposes of the Fourth Amendment. Investigatory seizures would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions

consideration. It is entirely irrelevant that it may be relatively easy for the government to prove guilt without using the product of illegal detention. The important thing is that those administering the criminal law understand that they must do it that way." 104 U. S. App. D. C., at 371–372, 262 F. 2d, at 468–469. On Bynum's retrial another set of fingerprints in no way connected with his unlawful arrest was used, and he was again convicted. The Court of Appeals affirmed this conviction. 107 U. S. App. D. C. 109, 274 F. 2d 767 (1960).

[5] Brief for Respondent 3.

be termed "arrests" or "investigatory detentions." [6] We made this explicit only last Term in *Terry* v. *Ohio,* 392 U. S. 1, 19 (1968), when we rejected "the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest' or a 'full-blown search.'"

Detentions for the sole purpose of obtaining finger-prints are no less subject to the constraints of the Fourth Amendment. It is arguable, however, that, because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense. See *Camara* v. *Municipal Court,* 387 U. S. 523 (1967). Detention for fingerprinting may constitute a much less serious intrusion upon personal security than other types of police searches and detentions. Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search. Nor can fingerprint detention be employed repeatedly to harass any individual, since the police need only one set of each person's prints. Furthermore, fingerprinting is an inherently more reliable and effective crime-solving tool than eyewitness identifications or confessions and is not subject to such abuses as the improper line-up and the "third degree." Finally, because there is no danger of destruction of fingerprints, the limited detention need not come unexpectedly or at an inconvenient time.

---

[6] The State relies on various statements in our cases which approve general questioning of citizens in the course of investigating a crime. See *Miranda* v. *Arizona,* 384 U. S. 436, 477–478 (1966); *Culombe* v. *Connecticut,* 367 U. S. 568, 635 (concurring opinion) (1961). But these statements merely reiterated the settled principle that while the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer.

For this same reason, the general requirement that the authorization of a judicial officer be obtained in advance of detention would seem not to admit of any exception in the fingerprinting context.

We have no occasion in this case, however, to determine whether the requirements of the Fourth Amendment could be met by narrowly circumscribed procedures for obtaining, during the course of a criminal investigation, the fingerprints of individuals for whom there is no probable cause to arrest. For it is clear that no attempt was made here to employ procedures which might comply with the requirements of the Fourth Amendment: the detention at police headquarters of petitioner and the other young Negroes was not authorized by a judicial officer; petitioner was unnecessarily required to undergo two fingerprinting sessions; and petitioner was not merely fingerprinted during the December 3 detention but also subjected to interrogation. The judgment of the Mississippi Supreme Court is therefore

*Reversed.*

MR. JUSTICE FORTAS took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, concurring.

I join the opinion of the Court, with one reservation. The Court states in dictum that, because fingerprinting may be scheduled for a time convenient to the citizen, "the general requirement that the authorization of a judicial officer be obtained in advance of detention would seem not to admit of any exception in the fingerprinting context." *Ante,* this page. I cannot concur in so sweeping a proposition. There may be circumstances, falling short of the "dragnet" procedures employed in this case, where compelled submission to fingerprinting would not amount to a violation of the Fourth Amendment even in the

absence of a warrant, and I would leave that question open.

Mr. Justice Black, dissenting.

The petitioner here was convicted of a brutal rape of a woman, committed in her own home. Fingerprints of the petitioner, left on the window sill of her home, were the clinching evidence bringing about petitioner's conviction. The Court, by once more expanding the reach of the judicially declared exclusionary rule, ostensibly resting on the Fourth Amendment, holds the fingerprint evidence constitutionally inadmissible and thereby reverses petitioner's conviction. The rape occurred on December 2, 1965, and, as was their duty, the police authorities began to make a searching investigation the morning of December 3. The raped woman was originally able to describe the rapist only as a young Negro male. With this evidence the police proceeded to interrogate a number of young Negroes on the streets, at their homes, or at the police station, and then permitted them to go on their way. The petitioner was among those so interrogated on December 3, at which time his fingerprints were made. The fingerprints were again taken on December 14. The record does not show that petitioner or any other young man who was questioned and fingerprinted ever made the slightest objection. Apparently all of them cooperated with the police in efforts to find out who had committed the rape. This case is but one more in an ever-expanding list of cases in which this Court has been so widely blowing up the Fourth Amendment's scope that its original authors would be hard put to recognize their creation.* For this most

---

*See, e. g., Bumper v. North Carolina, 391 U. S. 543—another rape case; Spinelli v. United States, 393 U. S. 410; Aguilar v. Texas, 378 U. S. 108; Recznik v. City of Lorain, 393 U. S. 166; and Griswold v. Connecticut, 381 U. S. 479.

unnecessary expansion of the Amendment, the Court is compelled to put its chief reliance on a Court of Appeals decision, *Bynum* v. *United States,* 104 U. S. App. D. C. 368, 262 F. 2d 465. I think it is high time this Court, in the interest of the administration of criminal justice, made a new appraisal of the language and history of the Fourth Amendment and cut it down to its intended size. Such a judicial action would, I believe, make our cities a safer place for men, women, and children to live.

I dissent from this reversal.

MR. JUSTICE STEWART, dissenting.

I do not disagree with the Court's conclusion that the petitioner was arrested and detained without probable cause. But it does not follow that his fingerprints were inadmissible at the trial.

Fingerprints are not "evidence" in the conventional sense that weapons or stolen goods might be. Like the color of a man's eyes, his height, or his very physiognomy, the tips of his fingers are an inherent and unchanging characteristic of the man. And physical impressions of his fingertips can be exactly and endlessly reproduced.

We do not deal here with a confession wrongfully obtained or with property wrongfully seized—so tainted as to be forever inadmissible as evidence against a defendant. We deal, instead, with "evidence" that can be identically reproduced and lawfully used at any subsequent trial.*

I cannot believe that the doctrine of *Mapp* v. *Ohio,* 367 U. S. 643, requires so useless a gesture as the reversal of this conviction.

---

*At the original trial the victim of the rape, under oath, positively identified the petitioner as her assailant. There now exists, therefore, ample probable cause to detain him and take his fingerprints.