Frederic ¡S. Berman, J.
The court is presented with a novel question regarding the correct procedures to be followed by the police where they have, at most, only a mere suspicion to believe that an automobile VIN (vehicle identification number) plate was altered. A research of the appropriate legal authorities reveals this to be a case of first impression in this jurisdiction.
The facts adduced at a motion to suppress hearing are as follows:
On February 7, 1974, at about .6:20 p.m., the defendant was parking his car in front of his residence in Brooklyn. At that time, the defendant was approached by a police officer, and pursuant to the officer’s request, the defendant produced a currently valid operator’s license and certificate of registration. The registration number presented by the defendant coincided with the VIN number observed on the dashboard of the car by the officer. Nevertheless, the officer directed the defendant to drive his car to the 78th Precinct, because the officer felt “ that the public VIN plate on the auto had .been moved and tampered with.” At the hearing, a photograph showing the dashboard and VEN plate was introduced into evidence. At the precinct, the officer indicated that he had picked up the hood of the car to check another VEN plate and found that it likewise corresponded to the certificate of registration. ¡Despite this, a member of the police auto crime unit thereafter was called to the precinct to compare the *1040 public YIN number with the confidential YIN number secretly placed on the body of the automobile by the manufacturer. As a result, a discrepancy between the public and confidential YIN numbers was discovered and the defendant was subsequently placed under arrest. Prior to taking the defendant to the precinct, the officer had not “ run a check on the car, to see whether there were any alarms out for the YIN plate number and the registration number which the defendant had shown.”
Defendant contends that his involuntary detention, the seizure of his car, and the later search conducted at the precinct were all initiated without a warrant and without probable cause, and therefore violated the prohibition of the Fourth Amendment against unreasonable searches and seizures.
Based on the facts of the instant case, the court is disposed to agree with the defendant’s contention:
When the officer directed the defendant to drive his car to the precinct, he had no probable cause to believe that the car was stolen. At most, he had a suspicion which might have justified some further inquiry, but had no justification for seizing the defendant’s car merely on suspicion.
While there apparently is no comparable case in this jurisdiction, under the rule of United States v. Squires (456 F. 2d 967), the officer’s seizure of the defendant’s car is clearly illegal under the circumstances presented here. In Squires, as in this case, an officer, suspicious of the status of the defendant’s car but lacking probable cause to believe that the car was stolen, seized the car and had it brought to the police station, where a search of the iCYIN (confidential vehicle identification number) was undertaken. The Court of Appeals for the Second Circuit concluded in the Squires case that the car had been improperly seized and that “the results of the inspection at the police station should not have been received in evidence.” (supra, p. 969.) 1 ‘ While circumstances amounting to less than probable cause may justify the minimal intrusion involved in an on-the-scene inspection of the YIN or CYIN, the greater intrusion involved in impounding or seizing a vehicle cannot be justified without probable cause.” (supra, p. 970.)
The violation of the Fourth Amendment by the officers is even more egregious in the instant case than in Squires, because not only was defendant’s car illegally seized here, but defendant himself was illegally detained. While the officers in Squires had no probable cause to seize the defendant’s vehicle, at least they had probable cause to detain the defendant, since they had a warrant to arrest him for a traffic infraction. In this case, however, the *1041 officer had neither a .warrant nor probable cause to detain the defendant when the seizure of the defendant and his car took place.
Although the defendant was not formally arrested until after a later search by the auto crime unit at the precinct, the defendant was certainly ££ taken into custody or otherwise deprived of his freedom of action in any significant way ” (Miranda v. Arizona, 384 U. S. 436, 444) when he was directed by the officer to drive his car to the 78th Precinct. It is clear that the Fourth Amendment prohibition against unreasonable searches of the person applies to situations falling short of formal arrest. “ The Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizens, whether these intrusions be termed £ arrests ’ or £ investigatory detentions ’ ” (Davis v. Mississippi, 394 U. S. 721, 726-727).
At the hearing, this court examined a photograph, offered into evidence by the defendant, showing the YIN plate in question. The plate did not appear to have been ££ scratched and bent ” as testified to by the officer. Nor was there any indication that the numbers on the YIN plate had been altered. There was a small tear in the upholstery next to the YEN plate, which the officer described as “ an extra hole.”
On the basis of the evidence, this court finds that, like Squires (456 F. 2d 967, supra), the most that the officer had was a “ suspicion [that] provided a reason for continuing the inspection at the parking lot * * * Had they continued the inspection at the parking lot and ascertained that the OYEN did not correspond to the YIN and the number on the registration certificate, they would have had probable cause to believe that the Cadillac had been stolen.” (Squires, supra, pp. 969-970; emphasis supplied.)
In the instant ease, the officer, having a suspicion, need only have gotten on the car radio to summon assistance at the actual site from a member of the auto crime unit. Had that been done, and the discrepancy between the public and confidential YIN numbers noted, then the officer would have had a proper basis for effecting an arrest.
However, the officer, here, chose not to follow that course of action. Instead, he detained the defendant, and required him to drive to the precinct, where the defendant was held for a period of time until the arrival of the member of the auto crime unit. It was only thereafter — as a result of the discovery of the discrepancy between the YIN and CYIN plate numbers — that defendant was placed under arrest.
*1042 As shown above, the defendant was detained and his car seized not on the basis of probable canse, as the Fourth Amendment requires, but on suspicion. The auto crime unit inspection of the car at the precinct flowed directly from and was incurably tainted by the officer’s improper detention and seizure. Consequently, any results of the auto crime unit search are ‘ ‘ fruit of the poisonous tree ” and inadmissible as evidence.
In view of all of the foregoing, defendant’s motion to suppress is granted.