STATE OF NORTH CAROLINA v. BARRY DEAN WALLS

No. 7627SC577

(Filed 19 January 1977)

1. **Constitutional Law § 21; Criminal Law § 60— defendant detained for fingerprinting — constitutional rights attach**

    Detentions, whether termed arrests or investigatory, for the sole purpose of obtaining fingerprints are subject to the constraints of the Fourth Amendment and when fingerprints are obtained from an accused while he is illegally detained, then the taking of such fingerprints constitutes an unreasonable seizure of a person in violation of the Fourth Amendment.

2. **Constitutional Law § 21; Criminal Law § 60— fingerprint evidence — failure to hold voir dire — error**

    In a prosecution for felonious breaking and entering and felonious larceny where defendant objected to evidence with respect to his fingerprints taken by police at a time when defendant was not under arrest and when there was no probable cause to arrest him, the trial court erred in failing to conduct a *voir dire* to determine if the constitutional rights of defendant were violated at the time his fingerprints were taken by police.

APPEAL by defendant from *Falls, Judge.* Judgment entered 17 March 1976 in Superior Court, GASTON County. Heard in the Court of Appeals 7 December 1976.

Defendant was indicted and tried for felonious breaking and entering and felonious larceny. The State presented evidence tending to show that early in the morning of 25 July 1975 Mr. and Mrs. Millard Hyleman locked the doors of their house and left for work. When they returned, they found that someone had broken into the house and had taken a TV, a stereo set, jewelry, and other items and that a wall clock had been taken off the wall and left on the couch. A policeman for the Gastonia Police Department testified that he dusted the house for fingerprints and lifted two latent prints from the clock. Another policeman testified that he took the defendant's fingerprints a few days after the alleged break-in. Defendant's fingerprints were then sent to the State Bureau of Investigation where they were compared with the latent fingerprints taken from the clock. An officer of the State Bureau of Investigation then testified that in his opinion one of the latent prints was that of defendant.

Defendant testified in his own behalf that he did not break into the Hyleman house and that on 25 July 1975 he spent the day at a public recreation area at Lower Crowder Creek Bridge in South Carolina with several friends.

The jury found defendant guilty as charged and a 20-year prison sentence was imposed. Defendant appealed.

*Attorney General Edmisten, by Associate Attorney Jack Cozart and Associate Attorney Joan H. Byers, for the State.*

*Jim R. Funderburk, Public Defender, for the defendant.*

MARTIN, Judge.

The trial court allowed in evidence and permitted testimony about a card containing defendant's fingerprints which were taken at the Gastonia Police Station on 28 July 1975, three days after the alleged crime. The card was sent to the State Bureau of Investigation on 31 July 1975 along with two latent prints found at the Hyleman home. One of the two latent prints was determined to be identical to one of defendant's prints on the fingerprint card. Subsequently, on 25 August 1975, a warrant was issued for the defendant's arrest and he was then indicted on 1 December 1975. At trial, the defendant timely objected to the admission of the fingerprint evidence arguing that the fingerprints should be excluded since there was no evidence of a valid arrest at the time the prints were taken. The objection was overruled. Defendant contends that the trial court erred in allowing this evidence without first determining that his constitutional rights were not violated when his fingerprints were obtained by the police. We agree.

The controlling case on this point is *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969). In *Davis*, the police were investigating the rape of an 86-year-old woman by a young man. During a period of approximately ten days, the police, without warrants, took at least twenty-four youths, including Davis, to police headquarters where they were questioned briefly, fingerprinted, and then released without charge. For Davis, this occurred on 3 December at which time there was no probable cause for his arrest. A few days later, Davis was returned to the police station where he was once again fingerprinted without either probable cause or a warrant for his arrest. These prints, together with the fingerprints of the other twenty-three

youths, were then sent to the Federal Bureau of Investigation where it was reported that Davis' prints matched those taken from a window in the home of the woman who had been raped. Davis was subsequently indicted and tried for rape. At trial, the fingerprint evidence was admitted in evidence over his timely objection that the prints should be excluded. The State made no claim that Davis voluntarily accompanied the police officers to headquarters on 3 December and willingly submitted to fingerprinting.

[1] In *Davis*, the United States Supreme Court held that the proceedings employed by the police rendered the use of the fingerprints constitutionally inadmissible at trial. The Court determined that detentions, whether termed arrests or investigatory, for the sole purpose of obtaining fingerprints are subject to the constraints of the Fourth Amendment and when fingerprints are obtained from an accused while he is illegally detained, as Davis was, then the taking of such fingerprints constitutes an unreasonable seizure of a person in violation of the Fourth Amendment. The Court then concluded that, notwithstanding its relevancy and trustworthiness as an item of proof, such evidence seized in violation of a person's constitutional rights is not admissible, under the exclusionary rule, in either State or Federal Courts.

Mr. Justice Brennan, in delivering the opinion of the Court, stated:

> "The exclusionary rule was fashioned as a sanction to redress and deter overreaching governmental conduct prohibited by the Fourth Amendment. To make an exception for illegally seized evidence which is trustworthy would fatally undermine these purposes. Thus, in *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L.Ed. 2d 1081, 1089, 81 S.Ct. 1684 (1961), we held that 'all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.' (Italics supplied.) *Fingerprint evidence is no exception to this comprehensive rule.*" *Davis v. Mississippi, supra* at 724, 22 L.Ed. 2d at 679, 89 S.Ct. at 1396. (Emphasis added.)

In rejecting the State's argument that the detention occurred during the investigatory stage rather than the accusatory stage and thus did not require probable cause, the Court went on to say that

". . . to argue that the Fourth Amendment [probable cause requirement] does not apply to the investigatory stage is fundamentally to misconceive the purposes of the Fourth Amendment. . . . Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions'. . . . Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment." *Davis v. Mississippi, supra* at 726-727, 22 L.Ed. 2d at 680-681, 89 S.Ct. at 1397.

In *State v. Accor* and *State v. Moore,* 277 N.C. 65, 175 S.E. 2d 583 (1970), a case very similar to the case at bar, the defendants were picked up, brought to the police station, and photographed without a warrant and without probable cause. The evidence at trial, as in the instant case, was silent as to the circumstances under which the defendants were picked up and there was no evidence that either defendant voluntarily accompanied the officers to the police station. The defendants were photographed before the issuance of the warrants for their arrest and there was no evidence sufficient to support a finding of probable cause of defendants' guilt of *any* crime at the time the photographs were taken. In addition, there was no evidence that one of the defendants ever consented to the taking of his photograph, and the evidence was insufficient to show that the other defendant had understandingly and voluntarily consented to the taking of his photograph.

Although *Accor* concerns photographs rather than fingerprints, the same principles apply. The North Carolina Supreme Court, in *Accor,* relied largely on *Davis v. Mississippi, supra,* in holding that the photographs by which the defendants were identified *and* the testimony surrounding the photographic identification were inadmissible on the ground that the photographs were taken in violation of the defendants' Fourth and Fourteenth Amendment rights.

While we agree with the dissenting opinion of Justice Black in *Davis v. Mississippi, supra,* we are bound by the majority opinion "expanding the reach of the judicially declared exclusionary rule" to include the taking of fingerprints.

[2]  Consequently, we hold that when defendant objected to the evidence with respect to his fingerprints taken by police, the

trial judge erred in not conducting a *voir dire* in the absence of the jury to determine if the constitutional rights of defendant were violated at the time his fingerprints were taken by the police. Had the trial judge determined, upon sufficient evidence, that at the time defendant's fingerprints were taken by police that (1) he was being held under a valid warrant, or (2) that there was probable cause for his detention, or (3) that he knowingly and intelligently waived his constitutional rights and agreed to be fingerprinted, then we think the evidence with respect to his fingerprints would have been admissible.

Inasmuch as defendant is entitled to a new trial because of the error hereinabove pointed out, we deem it unnecessary to discuss the other assignments of error brought forward in defendant's brief.

New trial.

Judges BRITT and VAUGHN concur.