430

STATE of Arkansas *v.* Philip Thurman FILIATREAU

CR 81-83                                    625 S.W. 2d 494

Supreme Court of Arkansas
Opinion delivered December 21, 1981

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellant.

*Lessenberry & Carpenter,* for appellee.

GEORGE ROSE SMITH, Justice. The appellee Philip Filiatreau, a tenth-grade student, and four others were charged with a conspiracy to commit a theft of property by threat. Philip was arrested at about 5:30 a.m. at his mother's house, was taken to police headquarters, and signed a

statement within a few minutes. This interlocutory appeal by the State is from an order suppressing the statement as having been the result of a warrantless arrest that violated the principles announced in *Payton* v. *New York*, 445 U.S. 573 (1980). Our jurisdiction of such appeals is stated in Rule 29 (1) (k).

The appellant argues that the officers did not have probable cause to make a warrantless arrest. That issue was not properly raised below and was not decided by the trial court. The motion to suppress merely stated that the statement, having been made while Philip was in custody, was "presumptively involuntary and should be so ruled." The presumption of involuntariness arises from the fact that the accused is in custody, not from the manner of his arrest. At the hearing the prosecutor stated with regard to the arrest that the issue had not been raised in the written motion (which was correct) and that the State was not prepared with its witnesses on that issue. The court had said at the outset that it was going to overrule anything that had not been asserted in a motion filed before the omnibus hearing, as the court's rule required. The court did not pass upon the issue of probable cause. It is not before us.

The real issue is whether Philip's arrest violated the *Payton* doctrine. Philip lived in his mother's house and had his own bedroom. Mrs. Filiatreau testified that when she answered the door that morning two officers identified themselves and said they needed to come in and talk to Philip and would have to take him downtown and question him. When they asked if they could come in, "I told them yes. . . . I told them that he was asleep. They told me that I would have to get him up. His room is directly off the entry hall. I went in and shook him. Detective Stone stood over him." Detective Baer took Mrs. Filiatreau into the den and explained that they were going to arrest Philip on charges of kidnapping, extortion, and other things. She said the officers used no force or threats. After Philip had dressed he was arrested and taken down to headquarters. The trial judge ruled that the arrest was illegal, reasoning that Philip was in his room, "his bedroom, asleep, that he was using that as his home and that he had, obviously, an expectation

of privacy in that room, and that was not waived by his mother." The court suppressed Philip's statement as a product of the arrest.

We disagree with the trial judge's understanding of the court's holding in *Payton*. There the officers, in seeking to make a warrantless arrest without exigent circumstances, broke open Payton's door when no one was there and seized evidence, which the Supreme Court suppressed. The court held that a nonconsensual warrantless entry into a person's home is unlawful except in exigent circumstances. It was specifically pointed out that the court was "dealing with entries into homes without the consent of any occupant."

Here it is the element of consent that distinguishes the two cases. There is no showing that Mrs. Filiatreau's consent to the officers' entry into the home was not voluntary. The trial judge did not so find. The case is therefore controlled by our decision in *Grant* v. *State*, 267 Ark. 50, 589 S.W. 2d 11 (1979), where the foster father of the defendant (who was apparently an adult earning his own living) was the owner of the house, with the defendant having his own bedroom. In holding that the foster father could consent to a search of the defendant's bedroom we cited a number of cases to support our conclusions: "A child, either dependent or emancipated (having reached his majority) does not have the same constitutional right or expectation of privacy in the family home that he might have in a rented hotel room, and the rights of the father [are] superior to those of the child, so that the father's consent to a search of the child's room [is] sufficient to render a warrantless search reasonable."

Both *Payton* and *Grant* deal with a seizure of property, while the present case deals with an arrest, which may be regarded as a seizure of the person. Certainly the Fourth Amendment protects persons as well as property from unreasonable seizures, but a basic question is whether the officer has a right to be where he is when he makes an arrest or seizes property. In either case a valid consent to the officer's presence dispenses with the need for an arrest warrant or a search warrant. Here the officers, by reason of Mrs. Filiatreau's consent, had a right to be in the house and

in Philip's bedroom. In the circumstances they unquestionably had the right to place him under arrest. The suggestion that Philip had to consent to his own arrest cannot be defended. An arrest, by definition, is a restraint of a person against his will. Thus a consensual arrest is a contradiction in terms, amounting merely to a surrender to authority. Philip's consent to his own arrest in his home was not required, given the officers' lawful presence there, any more than it would have been required upon a public street.

Reversed, the motion to suppress to be denied.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I respectfully dissent from the majority because I believe the rights of the appellant as guaranteed by the Fourth and Fifth Amendments to the United States Constitution have been violated. Early in the majority opinion it is stated:

> This interlocutory appeal by the state is from an order suppressing the statement as having been the result of a warrantless arrest that violated the principles announced in *Payton* v. *New York*, 445 U.S. 573 (1980).

Two sentences later the majority state:

> The appellant argues that the officers did not have probable cause to make a warrantless arrest. That issue was not properly raised below and was not decided by the trial court.

If the order was not decided by the trial court, how can there be an appeal from such order?

I will first discuss the matter of whether the question was raised in the court below. There is no question but that it was raised. An omnibus hearing was commenced on May 28, 1981. Several defendants, including the appellant, were involved in the omnibus hearing. The hearing did not conclude and was continued on June 16, 1981. This is evidenced by the statement of the court on the latter date:

What are we here for? I notice it's a continuation of the omnibus hearing. And I heard part of it and somebody wasn't here. Right?

At this time the court addressed appellant's counsel to the effect that it was the court's understanding that the voluntariness of the confession was the subject of the hearing. Appellant's attorney replied as follows:

Well, we're challenging the voluntariness in the full light of the 5th and 4th Amendments. And, therefore, there may be questions dealing with the arrest itself that would go to the voluntariness of the statement.

Witnesses were then called and questioned by both parties. Appellant did not object any further at this time and did not object to the decision by the trial court to continue the hearing. We have held that if the trial court proceeds with a hearing, this court will not reverse on that basis. *Williams* v. *State,* 272 Ark. 248, 613 S.W. 2d 391 (1981). Arkansas Rules of Criminal Procedure, Rule 16.2 (b), provides that a motion to suppress shall be filed no later than ten days before the date set for trial except that the court "for good cause shown may entertain a motion to suppress at a later date." The second omnibus hearing was set thirteen days before the trial of the case was to commence. Further, there is no requirement that a motion at an omnibus hearing be in writing. Arkansas Rules of Criminal Procedure, Rule 20.3 (b). The trial court was correct in ruling as it did on the motion to suppress. There was absolutely no question that the matter of a warrantless search was timely and properly raised. It could not be made more clear that the trial court considered the issue in its concluding statement which was as follows:

In this case, I'm going to go ahead and decide the issue because we've had one omnibus hearing in piecemeal and this one piecemeal and I don't want to continue it. So I'm going to go ahead and decide the issue.

The Fourth Amendment to the Constitution of the United States guarantees against unreasonable search and seizure of persons as well as houses, papers and other effects.

I think the court was absolutely right in relying upon *Payton & Reddick v. New York*, 445 U.S. 573 (1980). However, the case which, in my opinion, clearly settles the issue is *Dunaway v. New York*, 442 U.S. 200 (1979). I will not discuss the Fifth Amendment rights as such will not be involved if there was an illegal seizure under the Fourth Amendment. Any statement following an illegal seizure would naturally be fruits of a poisonous tree. There is no evidence in the record to indicate that the officers had probable cause for the arrest of the appellant other than their own statements to that effect. The officers simply stated that they felt they had probable cause but they did not bother going before a magistrate for the purpose of determining whether they had probable cause sufficient for the issuance of an arrest warrant. It was never the intent of the framers of the Constitution of the United States or the State of Arkansas nor of the Congress of the United States or the General Assembly of the State of Arkansas to allow officers to make their own determination of probable cause under such circumstances as exist in the present case. The majority opinion is based solely upon the consent of the appellant's mother to allow the officers to enter the home to look for the appellant. However, until they found the appellant they had no information which would have caused them to identify the appellant if they came face to face with him. In fact, there is some indication they thought they were looking for appellant's father. Furthermore, the officers never recited any facts to support their contention that they had probable cause.

Our view concerning the actions of the trial court in a motion to suppress evidence was well stated in the case of *Grant v. State*, 267 Ark. 50, 589 S.W. 2d 11 (1979), wherein we stated:

> Even though, in reviewing a trial judge's ruling on a motion to suppress evidence, we make an independent determination based upon the totality of the circumstances, we will not set aside the trial judge's finding unless we find it to be clearly against the preponderance of the evidence.

In the present case the trial court heard all of the evidence which was offered and made his ruling in accordance with the evidence presented. I cannot say that its decision was clearly against the preponderance of the evidence. In *Dunaway* v. *New York,* supra, the court held that the defendant was "seized" for Fourth Amendment purposes when he was arrested without a warrant and taken to the police station for questioning. They further held that the seizure was without probable cause in violation of the Fourth Amendment and that the confession given following the seizure and interrogation was inadmissible. Even though they may have meticulously complied with the Fifth Amendment, the confession was nevertheless inadmissible at the trial. The *Dunaway* facts are very similar to those in the present case. An officer questioned a jail inmate who furnished information that implicated Dunaway in a crime. The officer then ordered a subordinate to "pick up" Dunaway and "bring him in." After arriving at the detention facility he was placed in an interrogation room where he was questioned by the officers after he had been given the warnings required under *Miranda* v. *Arizona,* 384 U.S. 436 (1966). Dunaway waived counsel, made a statement and drew sketches which incriminated him. His pretrial motion to suppress the statement and sketches was overruled and he was convicted. The appellate court of New York affirmed the conviction but the United States Supreme Court reversed and remanded. In *Dunaway* it was held that if a person is detained under circumstances similar to an arrest, such detention must be supported by probable cause. Detention for custodial interrogation (regardless of its label) intrudes so severely on interests protected by the Fourth Amendment as to necessarily trigger the traditional safeguards against illegal arrest. *Davis* v. *Mississippi,* 394 U.S. 721 (1969).

The United States Supreme Court has held that searches and seizures conducted without prior approval by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject only to a few exceptions which are jealously and carefully drawn. It is the duty of those who seek to show an exception to the rule to prove the need for such an arrest. Even if there is probable cause for seizure or search of an automobile, a search of an automobile without

a valid warrant is unconstitutional unless there are exigent circumstances making it impractical to obtain a warrant. *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971). Certainly, in the present case where a person is seized, the result should conform to the rights afforded the owner of personal property. The state clearly has not met its burden of proving the necessary circumstances existed which would permit setting aside the Fourth Amendment.

I would affirm the judgment of the trial court.