**Donna Renae RUSSELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–00273–CR.**

Court of Appeals of Texas, Dallas.

May 11, 1984.

Rehearing Denied June 7, 1984.

Jan E. Hemphill, Nancy Gail Huggins, Dallas, for appellant.

Henry Wade, Dist. Atty., Jeffrey B. Keck, Asst. Dist. Atty., Dallas, for appellee.

Before STOREY, WHITHAM and ROWE, JJ.

WHITHAM, Justice.

Appellant, Donna Renae Russell, appeals a conviction for murder. In her first ground of error, appellant contends that the trial court erred in denying her motion to suppress her statements to law enforcement authorities. In a related second ground of error, appellant contends that the trial court erred in denying her motion to suppress clothing seized from appellant's residence and the results of tests performed thereon, as well as a hammer found as a result of the search. We conclude that a police search of appellant's residence violated her fourth amendment rights, that appellant's subsequent oral confession to the police was the tainted fruit of the illegal search and that, therefore, appellant's confession and other fruits of the search were erroneously admitted in evidence. Accordingly, we reverse and remand.

On January 18, 1982, firemen found a dead body in a burning house. Appellant lived across the street from the deceased. On that day, police officer King spoke with appellant about a cutting of telephone wires at a house near the deceased's residence. In that conversation, King requested appellant to come to the police station. Appellant agreed to do so and King took her to the station on January 18. *Miranda* warnings were read to appellant by the police and she was questioned about the fire, but not in detail. She was primarily questioned about the cut wires. The police took a written statement concerning the wires. The matter of deceased's death was discussed between appellant and the police at the station on January 18 and appellant agreed to return to the station the next day to take a polygraph test. The record is silent as to whether appellant was ever arrested for cutting the telephone wires.

About 7:00 o'clock a.m. on January 19, police officer Graves, a homicide investigator, transported appellant from her residence to the polygraph room at the police station. Graves heard from the polygraph examiners that appellant had run out of the polygraph room and was running down Main Street, a public street in the City of Dallas. Graves instructed the polygraph examiners "to go get her." The polygraph examiners did so. The record is silent on the details of the police pursuit of appellant. Appellant was returned to Graves' office crying and upset. Graves described appellant as "hysterical." Graves obtained cigarettes and a cold drink for appellant and "let her calm down." At 9:30 o'clock a.m., shortly after appellant was returned to Graves' office, appellant gave King a signed consent to search her residence. Graves gave appellant a *Miranda* warning after she was returned to his office and before she signed the consent. King then went and searched appellant's residence, found and seized clothing appearing to have blood stains and submitted the clothing to the forensic science laboratory. Upon learning that there was human blood on the clothing, King telephoned Graves, while Graves was still talking with appel-

lant in his office, and reported that there was human blood on the clothing. This call was between 11:00 o'clock a.m. and noon on January 19. Graves advised appellant of the results of the lab report. Appellant gave Graves an oral statement at 12:20 o'clock p.m. The oral statement was reduced to writing and signed about 1:00 o'clock p.m. Following a further *Miranda* warning, appellant thereafter gave Graves a further oral statement adding facts she had not told him in her first oral statement. The second oral statement was reduced to writing and signed at 1:45 o'clock p.m. Graves arrested appellant after the first oral statement. Other than appellant's arrest and the typing of the first written statement, the record is silent as to what occurred between the end of appellant's first oral statement and the time she signed her first written statement. Other than the typing of the second written statement, the record is silent as to what occurred between the end of appellant's second oral statement and the time she signed her second written statement.

The two January 19 written statements were admitted into evidence for record purposes only. The two oral statements were admitted in evidence before the jury through Graves' testimony. With respect to the first oral statement, Graves gave the following account of appellant's confession. On the 18th of January she had gone to the deceased's residence and knocked on the door. The door came open and she entered the residence without invitation. The deceased confronted her in the living room, an argument ensued and appellant ran to the kitchen in the deceased's residence and obtained a hammer. Appellant then struck deceased on the head with the hammer and when the deceased ran into the back bedroom, appellant pursued her and struck her with the hammer several more times. The deceased then fell over the heater located in the bedroom. As to the second oral statement, Graves gave the following account of appellant's confession. Appellant again told Graves about attacking the deceased with a hammer and that when the

deceased fell in the bedroom, appellant covered the deceased with a blanket which caught fire at about the same time that the appellant left the house. Appellant dropped the hammer before leaving the deceased's house. Graves further testified that the next day he recovered the hammer in evidence from under debris on the floor of the back bedroom of deceased's residence.

Appellant was sixteen years old on the date of the offense. Pursuant to TEX. FAM.CODE ANN. § 54.02 (Vernon 1975 and Vernon Supp.1984), the juvenile court waived jurisdiction, certified appellant to be tried as an adult and transferred her to district court. The police initially treated appellant as an adult rather than as a minor because on January 18, when she was first interviewed by King, she told King that she was eighteen or nineteen years old. The next morning appellant told Graves that she was eighteen years old. King and Graves believed appellant's representations as to her age. Several months later both King and Graves learned that appellant was actually sixteen years old at the time of the offense.

Appellant advances three principal arguments under her first and second grounds of error. First, that her January 19 statements were not taken in accordance with TEX.FAM.CODE ANN. § 51.09 (Vernon Supp.1984) and, therefore, inadmissible in evidence. Second, that her January 19 statements were the products of an unlawful detention and, therefore, inadmissible in evidence. Third, that her January 19 statements and certain other evidence were the products of an unlawful search and, therefore, inadmissible in evidence. We do not read appellant's brief to assert an unreasonable search and seizure under TEX. CONST. art. I, § 9, nor to rely upon the Texas statutory exclusionary rule, TEX. CODE CRIM.PROC.ANN. art. 38.23 (Vernon 1979). Rather, appellant asserts a deprivation of fourth amendment rights. Accordingly, our disposition of the present case is based solely on the fourth amendment.

## Appellant's Family Code Argument

■ TEX.FAM.CODE ANN. § 51.09 contains provisions pertaining to written and oral statements of a child while in the custody of a law enforcement officer. It is obvious that the State did not introduce the two written statements in evidence before the jury, but relied only upon the oral statements, because of language in section 51.09. Appellant asserts, however, that not even the oral statements were admissible under section 51.09. We conclude that appellant's reliance upon TEX.FAM.CODE ANN. § 51.09 is misplaced.

Section 51.09 applies only to proceedings under Title 3 of the Family Code (Delinquent Children and Children in Need of Supervision). This was made clear in *Swink v. State*, 617 S.W.2d 203, 211 (Tex. Crim.App.1981), in which the accused, also sixteen years of age, was convicted of murder. "[Section 51.09] upon which appellant relies speaks only in terms of proceedings under Title 3 of the Family Code. The complained of actions in this cause did not occur under that title." *Swink*, 617 S.W.2d at 211. Accordingly, we conclude that section 51.09 did not require the trial court to suppress appellant's statements to law enforcement authorities. Moreover, we conclude that with respect to the search of appellant's residence, section 51.09 did not require the trial court to suppress clothing seized from appellant's residence, the results of tests performed on the clothing and a hammer found as a result of the search.

## Appellant's Unlawful Detention Argument

■ Statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will. *Florida v. Royer*, —— U.S. ——, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); *Dunaway v. New York*, 442 U.S. 200, 218–19, 99 S.Ct. 2248, 2259, 2260, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 601–02, 95 S.Ct. 2254, 2260–2261, 45

L.Ed.2d 416 (1975). In the present case, we conclude that appellant was in custody and being detained against her will at the time she gave her statements. Appellant attempted to leave the police station, but was pursued and returned by the police to the station. We hold that the pursuit and return amounted to a show of official authority such that "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Therefore, we conclude that when the police pursued and returned appellant to the police station, she was effectively seized for the purposes of the fourth amendment. We also conclude that appellant's detention was illegal. We reach this conclusion because according to King and Graves they had no probable cause to arrest appellant until after her first oral statement. Reasonable suspicion of crime is insufficient to justify custodial interrogation even though the interrogation is investigative. *Royer*, 103 S.Ct. at 1325; *see Dunaway*, 442 U.S. at 211–12, 99 S.Ct. at 2255–2256; *Brown*, 422 U.S. 590, 95 S.Ct. 2254; *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). It follows, and we so hold, that appellant was arrested in violation of her rights under the fourth amendment and that her statements were given during a period of illegal detention.

Although we hold that appellant's statements were given during a period of illegal detention, we conclude that we need not decide the question posed by appellant's second argument, i.e., whether the statements were inadmissible as the products of appellant's unlawful detention. We need not decide this question because we conclude that appellant's third argument under both her first and second grounds of error disposes of both grounds and requires reversal. This brings us to appellant's third argument, i.e., that the statements and certain evidence were the products of an unlawful search.

*Appellant's Unlawful Search Argument*

■ Appellant insists that her statements were the fruit of an illegal search

and that the exclusionary rule applies to the statements. The exclusionary rule provides that all evidence obtained by searches and seizures in violation of the Constitution is inadmissible in a state court. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). Therefore, we must consider appellant's challenge to the validity of appellant's consent to search her residence.

■ When the State seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). The State's burden is not satisfied by showing a mere submission to a claim of lawful authority. *Royer*, 103 S.Ct. at 1324. Appellant was under arrest in violation of her rights under the fourth amendment at the time she gave her consent. Although appellant received a *Miranda* warning just before she signed the consent, the warning "cannot assure in every case that the Fourth Amendment violation has not been unduly exploited." *Brown*, 422 U.S. at 603, 95 S.Ct. at 2261. The question of free will must be answered on the facts of each case. No single fact is dispositive. 422 U.S. at 603, 95 S.Ct. at 2261. In *Brown* and as reiterated in *Dunaway* the Supreme Court identified factors to be considered in determining whether a confession has been obtained by exploitation of an illegal arrest. *Dunaway*, 442 U.S. at 218, 99 S.Ct. at 2259; *Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–2262. As summarized by our Court of Criminal Appeals in *Green v. State*, 615 S.W.2d 700, 708 (Tex.Crim.App.1981), those factors are:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and

588

(4) the purpose and flagrancy of the official misconduct.

We conclude that those same factors are relevant and are to be considered in deciding whether a consent to search has been obtained by exploitation of an illegal arrest.

■ In the present case there was a *Miranda* warning. The other three factors, however, are unfavorable to the State. We know appellant's trip to the police station began about 7:00 o'clock a.m. The record does not tell us the elapsed time between 7:00 o'clock a.m. and appellant's pursuit and return to Graves' office. We know that appellant signed the consent at 9:30 o'clock a.m. From the record as a whole, we conclude that the illegal arrest and consent were in close proximity. Moreover, no circumstances intervened. Nothing occurred between appellant's hysterical return to Graves and the consent other than the possibility of a cigarette, a cold drink and the opportunity to calm down. The record is silent as to whether appellant smoked a cigarette, drank a cold drink or actually calmed down and returned to a non-hysterical state before she signed the consent. Moreover, we conclude that a cigarette, a cold drink and the opportunity to calm down would not constitute an intervening circumstance between illegal arrest and consent in the present case. With respect to official misconduct, we conclude that a sixteen-year-old who is voluntarily in a police station, and not under arrest, ought to be free to leave if he or she wishes to do so. The pursuit and return by the police would be strong notice to appellant that hence forth she had best do as the police told her to do. Under those circumstances, appellant might well decide that if the police want to search, then by all means she had better let them do so.

Considering all the *Brown* factors as a whole, we cannot say that the sixteen-year-old female appellant was acting from an independent act of free will when consent to search her residence was taken under the facts of the present case. We conclude that the State has failed to establish that appellant's consent was "freely and volun-tarily given." *Bumper,* 391 U.S. at 548, 88 S.Ct. at 1791. It follows, and we so hold, that appellant's consent to search her residence was the exploitation of an illegal arrest. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

■ Accordingly, we hold further that the search of appellant's residence was unlawful. Appellant's confession followed the unlawful search in the present case. A confession subsequent to an unlawful search is a fruit of the search and, therefore, inadmissible. *Wong Sun,* 371 U.S. at 484–85, 83 S.Ct. at 415–416; *Barber v. State,* 611 S.W.2d 67, 69 (Tex.Crim.App. 1981). Therefore, we hold that the trial court erred in denying appellant's motion to suppress her January 19 statements. Appellant's first ground of error is sustained. It follows and, we so hold, that the clothing seized from appellant's residence, the results of tests performed on that clothing and the hammer found as a result of the search were illegally obtained in violation of appellant's fourth amendment rights. Consequently, we hold further that the trial court erred in denying appellant's motion to suppress clothing seized from her residence and the results of tests performed on that clothing, and a hammer found as a result of the search. Appellant's second ground of error is sustained.

Reversed and remanded.