23638

In re Investigation of Death of Melinda Renee SNYDER. STATE of South Carolina, Appellant v. John DOE and Jim Doe, Respondents.

(417 S.E. (2d) 572

Supreme Court

---

[2] The remittitur is usually made fifteen (15) days after the opinion is issued. *See* Rules 221(b), SCACR.

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* Columbia, and *Sol. Larry F. Grant,* York, *for appellant.*

*Leland B. Greeley,* Rock Hill, *for respondent John Doe.*

*Thomas A. McKinney,* of *McKinney Givens & Miller,* Rock Hill, *for respondent Jim Doe.*

Heard June 11, 1991.

Decided April 13, 1992.

*Per Curiam:*

The State of South Carolina appeals a circuit judge's denial of its motion for an order permitting the taking of nontestimonial evidence from Respondents John Doe and Jim Doe, unarrested suspects in a homicide investigation. The circuit court denied appellant's motion based upon its finding that there is no procedure under South Carolina law that would allow the

State to obtain such evidence when there is not sufficient probable cause to arrest the suspects. We reverse.

The case arose out the death of Melinda Renee Snyder, who died as the result of being shot on January 23, 1990. An autopsy showed no signs of other physical assault or sexual attack. Subsequently, the assistance of the State Law Enforcement Division (SLED) was requested in the investigation. Some weeks later, SLED revealed that its analysis showed signs of semen but did not reveal any spermatozoa in the victim's body.

The investigation focused on the respondents. Jim Doe's sister shared a residence with the victim. His sister called Jim Doe's home to report the shooting and he, with his mother, went to the victim's home on the night of the shooting. Jim Doe had visited his sister at the residence on at least two occasions prior to the incident.

The State issued notice dated March 6, 1990 of its Motion for a court order allowing it, forcibly if necessary, to remove samples of blood and saliva, along with head and public hair, to be analyzed in connection with the investigation. Additionally, the State sought "major cause" palm and fingerprints from Jim Doe. The circuit judge issued a Rule To Show Cause dated and served March 6, 1990, for a hearing on March 9, 1990. On March 9, 1990, no hearing was held, but the circuit judge met with the State's and respondents' counsel and requested counsel for all parties to file briefs, which were subsequently submitted.

On May 22, 1990, counsel for the State informed the circuit judge and respondent's counsel of additional research conducted by his office and submitted the results for consideration by the judge. On June 6, 1990, the judge requested counsel for all parties to rebrief the issue by June 29, 1990. After receiving the briefs and without ever holding a hearing to determine probable cause, on July 2, 1990, the court issued its order denying the State's motion. In its ruling, the circuit count noted that the intrusion necessary for obtaining the requested samples would require narrowly defined guidelines and procedures.

On appeal, the State contents the procedure for requiring unarrested suspects to produce nontestimonial evidence is covered under the South Carolina Search

Warrant Statute, S.C. Code Ann. § 17-13-140 (1985).

Respondents assert that the word "property" as used in Section 17-13-140 does not include nontestimonial evidence. We disagree.

Section 17-13-140 covers "the issuance, execution and return of search warrants for property connected with the commission of crime . . ." Subsection (4) provides for the issuance of a search warrant for *"property* constituting evidence of crime or *tending to show that a particular person committed a criminal offense."* Under this court's construction, "property" as used in Section 17-13-140 encompasses nontestimonial identification evidence,

Respondents next assert that Section 17-13-140 contains no guidelines and procedures for obtaining nontestimonial identification evidence. However, guidelines and procedures for acquiring such evidence were promulgated in the case of *In re: An Investigation into the Death of Abe A.,* 56 N.Y. (2d) 288, 452 N.Y.S. (2d) 6, 7, 437 N.E. (2d) 265, 266 (1982). *David M. v. Dwyer,* 484 N.Y.S. (2d) 323, 107 A.D. (2d) 884 (1985) [citing *Matter of Abe A., supra.*] established considerations for determining whether or not there exists probable cause to permit the acquisition of such evidence. These elements are:

(1) probable cause to believe the suspect has committed the crime,
(2) a clear indication that relevant material evidence will be found, and
(3) the method used to secure it is safe and reliable.

Additional factors to be weighed are the seriousness of the crime and the importance of the evidence to the investigation. The judge is required to balance the necessity for acquiring involuntary nontestimonial identification evidence against constitutional safeguards prohibiting unreasonable bodily intrusions, searches, and seizures. *Id.*

Respondents cite *Davis v. Mississippi,* 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. (2d) 676 (1969), as controlling authority. In *Davis,* the United States Supreme Court held that seizing the fingerprints of a suspect without probable cause violated the fourth amendment. The case under consideration presently is distinguishable in that no hearing was held to determine

whether or not probable cause existed.

We construe Section 17-13-140 to provide for the involuntary submission of nontestimonial identification evidence. Further, this Court holds that upon a sufficient showing of probable cause for the issuance of an order, a court may order that such evidence be obtained from unarrested suspects within guidelines mandated under the statutory provisions, case law, and Constitutional laws of this State and of the United States.

Accordingly, the judgment of the circuit court is reversed and this case is remanded for a hearing to determine whether or not there exists probable cause for the issuance of the requested order.

Reversed and remanded.