PATTERSON, Judge.
The appellant, S.E.G., appeals his transfer from the Jefferson County Juvenile Court to *348 the Jefferson County Circuit Court to be tried as an adult on charges of robbery in the first degree, rape in the first degree, sodomy in the first degree, and two counts of kidnapping in the second degree. He raises one issue for review.
S.E.G. contends that the juvenile court erred by considering evidence in his transfer hearing that was obtained as a result of an allegedly illegal arrest. S.E.G. was arrested in June 1993 for the illegal possession of drugs as the result of a drug raid at a house on Washington Avenue in Birmingham. He was fingerprinted and photographed at the police station. S.E.G. was later released because the police did not think they had enough evidence to charge him for any drug-related offenses arising out of the raid. In compliance with police policy, S.E.G’s fingerprints were entered into the automated fingerprint identification system computer in Montgomery. In July 1993, a latent fingerprint that had been obtained during the investigation of a 1991 kidnapping and robbery case was entered, as routine, into the system to see if it matched any current known prints. The fingerprint had been previously entered into the system, and no match had been found. However, on this entry, S.E.G.’s fingerprint, which had been entered into the system in June 1993, matched the latent fingerpiúnt.
As a result of this match, the Birmingham police put out a “be on the lookout” (“BOLO”) for S.E.G. with an instruction to arrest him on probable cause of kidnapping. In August 1993, two police officers, on the basis of the BOLO, approached S.E.G. and arrested him. Because he had in his possession a sawed-off shotgun at the time of his arrest, he was charged for possession of that weapon. He was taken to the Homewood city jail. The next day, Sergeant Edward A. McKenzie conducted a tape-recorded interview of S.E.G., questioning S-E.G. about the kidnapping and robbery of one victim and about another kidnapping, rape, and sodomy involving another victim that had also occurred in 1991. S.E.G. admitted that he had been involved with the kidnapping, rape, and sodomy of the later victim, but denied that he had actually raped the victim. S.E.G. was shown a picture taken by a camera positioned at an automated teller machine showing this latter victim being forced to obtain cash from the automated teller machine. S.E.G. identified himself as the person in the picture. However, S.E.G. did not admit to the kidnapping and robbery with which his fingerprint had been connected.
S.E.G. contends that the police did not have probable cause to arrest him initially as a result of the drug raid at the house on Washington Avenue. He contends, therefore, that all information resulting from that arrest was illegally obtained and thus should not have been considered by the juvenile court in his transfer hearing. We consider that the sole issue in this case, assuming arguendo that the police did not have probable cause to arrest S.E.G. initially as a result of the drug raid, is whether S.E.G.’s fingerprint taken as a result of this illegal arrest, should be considered “fruit of the poisonous tree.” Put another way, we must determine whether the juvenile court erred by considering the fingerprint match-up, S.E.G.’s confession, and his identification of himself in the photograph, all flowing from the taking of S.E.G.’s fingerprints during an illegal arrest.
In Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), relied upon by the appellant, a rape victim identified her attacker as a “Negro youth.” The local police brought in 24 black youths, questioned them, and fingerprinted them in an effort to find the attacker. Davis was one of the youths brought in, and his fingerprints matched latent prints found at the crime scene. The United States Supreme Court held that fingerprints taken as the result of an illegal arrest should be suppressed. However, we conclude that the Davis holding is not applicable to these facts. The Davis case is factually distinguishable for one main reason: S.E.G.’s illegal arrest was the result of an offense completely independent of the offenses with which he was charged and for which he has been certified as an adult for trial. The police did not seek S.E.G. with the purpose of finding an excuse to arrest him in an effort to obtain his fingerprints.
The following analysis of Davis and Paul-son v. State, 257 So.2d 303 (Fla.Dist.Ct.App. *349 1972), a case factually similar to the instant ease, highlights this distinction:
“In Davis the defendant was taken into custody for the purpose of getting his fingerprints for use in investigation of the crime which prompted the illegal arrest, and thus that ease should not be read as declaring that fingerprints taken after an illegal arrest are always inadmissible. Because fingerprinting, like photographing, is a rather standard booking procedure, it is possible that prints taken merely as a matter of routine might be utilized on some later occasion to connect the defendant with some crime totally unrelated to the reasons underlying the illegal arrest.... Such a case is Paulson v. State, where defendant’s fingerprints were routinely taken following his arrest for public drunkenness. On a later occasion it was determined that those prints matched those left at the scene of a larceny. Stressing that the arrest in this case, albeit illegal,- had not been made for the purpose of obtaining defendant’s prints or to otherwise serve as a subterfuge in support of investigation of some other offense, the court concluded that Davis did not compel suppression of the prints. ‘The arrest may have been a mistake but it was not an example of overreaching governmental misconduct which must be suppressed at any cost.’ [257 So.2d at 305.]”
4 Wayne R. LaFave, Search and Seizure § 11.4(g) (2d ed. 1987) (footnotes omitted).
In People v. McInnis, 6 Cal.3d 821, 494 P.2d 690, 100 Cal.Rptr. 618 (1972), the California Supreme Court upheld the use of a booking picture, routinely made pursuant to an illegal arrest, to identify a robber. The court reasoned that to hold that a booking picture made pursuant to an illegal arrest should be forever “fruit of a poisonous tree” would be in effect allowing “criminal immunity.” The court went on to say,
“It would in effect be giving a crime insurance policy in perpetuity to all persons once illegally arrested: if the photograph of a person obtained because of such an arrest becomes instrumental in the identification of that person for a crime committed many years later, it could be urged that but for the old illegal arrest the criminal would not have been identified.”
Id. at 827, 494 P.2d at 693, 100 Cal.Rptr. at 621.
Certainly, this court is sensitive to our responsibility to enforce the exclusionary rule when the circumstances of a particular police action warrant. However, this is not such a case. In no way do the circumstances here intimate that S.E.G.’s 1993 arrest for illegal possession of drugs was a mere pretense to obtain evidence for the police investigation of the 1991 crimes, which are totally unrelated to the reasons for the allegedly illegal arrest. The taking of S:E.G.’s fingerprints was a standard procedure, taken merely as a matter of routine. We adopt the rationale of Paulson and McInnis. Accordingly, we find that S.E.G.’s 1993 arrest for illegal possession of drugs, even if illegal, did not taint the subsequent match-up of his known fingerprints with the latent fingerprint found in connection with the 1991 kidnapping and robbery investigation and likewise did not taint his subsequent arrest for the crimes that are the subject of his transfer and his subsequent statements inculpating him in the commission of rape, sodomy, and kidnapping.
AFFIRMED.
All Judges concur.