BARKETT, Circuit Judge,
concurring in part and dissenting in part:
I concur in affirming the conviction and sentences of all the defendants with the exception of Li Chi-Cheong. The Supreme Court wrote in Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) that “[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.” (emphasis added). Because I believe that this record does not support a conclusion that there was probable cause to arrest Li, as opposed to his companions, I would reverse his conviction and vacate his sentence.
I do not question that sufficient probable cause existed to arrest Li’s companions. Their suspicious behavior in conjunction with the signing of a false credit card receipt by one of these companions provided cause as to them. The majority errs, in my view, by finding probable cause as to Li based not upon his own actions, but only upon his presence while his companions purportedly committed a crime in the absence of any record evidence that he was aware that a crime was being committed.
To support its conclusion that probable cause to arrest Li existed, the majority relies on the following:
(1)The arresting agent was “experienced in credit card fraud and had been trained by the Secret Service in identification of fraudulent cards”; (This is irrelevant as to Li since he did not pass or possess any fraudulent credit cards).
(2) A jeweler in Bal Harbor reported that an Asian male had attempted to make purchases with a fraudulent credit card, which had been abandoned by the suspect when the clerk attempted to verify the card; (There was no connection to any specific Asian male and certainly not to Li).
(3) The arresting officer learned that well-dressed Asian males in small groups were defrauding high-end stores with fraudulent credit cards; (There was no connection in the record tying Li to any known or suspected criminal activity at that time, nor any evidence in the record that he was “well-dressed” or used a credit card. Li is indeed Asian, as are many of the shoppers in our malls. He was also in the company of other Asian males who were shopping. But that of course cannot serve as the sole basis for probable cause).
(4) The agent saw a videotape of four “suspicious” Asian males making credit card purchases in Saks; (Li was not one of the people seen on the videotape).
(5) The agent observed one Asian man make a credit card purchase at another store. At the same time, the majority asserts, the “heavyset” man from the Saks video “sat in a chair facing the mall acting, according to [the agent], as a lookout.”; (There is no evidence that Li knew a fraudulent credit card was used at this time. Indeed, the agent testified that at the time that the purchase was made, Li was standing “in the other half of the store” from the register).
(6) The group proceeded to a second store and made a credit card purchase. Li was standing next to the person who signed the credit card receipt; (No evidence was presented that Li saw, or could have seen, the card before, during or after it was signed.)
(7) When the agent asked for identification, one of Li’s companions produced a phony driver’s license and credit cards; (Li, *879 however, did not have any credit cards and produced his own driver’s license).
When we focus our particularized attention on Li as an individual, as we must, the worst that could be said of him at the time of arrest[1] is that he was associating with people who were breaking the law. There is simply no evidence to support an inference that Li knew that they were doing so. In United States v. Di Re, 332 U.S. 581, 593, 68 S.Ct. 222, 227-28, 92 L.Ed. 210 (1948), the Supreme Court, in denying the existence of probable cause, wrote:
The argument that one who “accompanies a criminal to a crime rendezvous” cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. (Emphasis added).
The Supreme Court reiterated this rule in Ybarra, which makes clear that “a person’s mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.” 444 U.S. at 91, 100 S.Ct. at 342.
Additionally, in United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), the Supreme Court considered what standard a police officer must satisfy in order to make a traffic stop. The Court stated that there must be a suspicion that the “particular individual being stopped is engaged in wrongdoing.” Id. at 418, 101 S.Ct. at 695 (Emphasis added). If particularized suspicion is required for a traffic stop, and the traffic stop standard is less stringent than the probable cause standard, then surely particularized suspicion must also be required to satisfy the more demanding test of probable cause. As Cortez notes, quoting Terry v. Ohio, 392 U.S. 1, 21 n. 18, 88 S.Ct. 1868, 1880 n. 18, 20 L.Ed.2d 889 (1968), “This demand for specificity in the information upon which the police action is predicated is the central teaching of this Court’s Fourth Amendment jurisprudence.” Cortez, 449 U.S. at 418, 101 S.Ct. at 695. See also Sibron v. New York, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968) (stating that no probable cause could exist to arrest where an officer had no information concerning the defendant, saw the defendant talking to a number of known drug addicts for several hours, and could not hear what the defendant was saying to the addicts); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (dragnet detention and fingerprinting of black men fitting general description of perpetrator of crime held violative of Fourth Amendment); United States v. Brignoni-Ponce, 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (“[Border patrol] officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country.”); United States v. Martinez-Fuerte, 428 U.S. 543, 560, 96 S.Ct. 3074, 3077, 49 L.Ed.2d 1116 (1976) (citing Terry for the proposition that “some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure” but that no individualized suspicion is necessary for Border Patrol to stop and question motorists at “reasonably located checkpoints.”); Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) (“the Fourth Amendment requires that a seizure must [either] be based on specific, objective facts indicating that society’s legitimate interests require the seizure of the particular individual” or be performed pursuant to a plan embodying neutral limitations); Delaware v. Prouse, 440 U.S. 648, 662, 99 S.Ct. 1391, 1400-01, 59 L.Ed.2d 660 (1979) (stating that regulatory inspections, when not undertaken pursuant to previously specified neutral criteria, must be accompanied by individualized, articulable suspicion). See also I.N.S. v. Delgado, 466 U.S. 210, 233, 104 S.Ct. 1758, 1771, 80 L.Ed.2d 247 (1984) (Brennan, J., dissenting) (“This requirement of particularized suspicion provides the chief *880 protection of lawful citizens against unwarranted governmental interference with their personal security and privacy.”).
Under the majority’s analysis, shopping with someone who unbeknownst to her or his companions was shoplifting would be sufficient probable cause to arrest. I do not believe the majority’s approach comports with the law of probable cause, and, accordingly, dissent.

. Although the majority's analysis discusses subsequently discovered evidence of Li’s culpabilily, it recognizes, as it must, that “it is not relevant to the probable cause determination."